**Anna R. DEEL; Onnie Dale Adcock, on her own behalf and as mother and next friend of Tamatha Adcock and Patricia Adcock, Plaintiffs–Appellants,**

v.

**Larry D. JACKSON, Commissioner of Virginia Department of Social Services; Otis R. Bowen, Secretary of Health and Human Services, Defendants–Appellees.**

No. 86–1693.

United States Court of Appeals,
Fourth Circuit.

Argued June 9, 1988.

Decided Dec. 8, 1988.

---

Margaret Tuttle Schenck (Martin Wegbreit, Client Centered Legal Services of Southwest Virginia, Inc., Melvin Hill, James Cromwell, Virginia Legal Aid Soc., on brief), for plaintiffs-appellants.

Jacob Matthew Lewis, U.S. Dept. of Justice, Thomas James Czelusta, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., John Alderman, E. Montgomery Tucker, Beverly Dennis, III, Javier Arrastia, Office of the Gen. Counsel, Dept. of Health and Human Services, on brief) for defendants-appellees.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting in banc.

WILKINSON, Circuit Judge:

This appeal involves a challenge to Virginia's transfer of assets rule, a part of its program of Aid to Families with Dependent Children. The rule denies eligibility to persons who within two years of their application have transferred real or personal property for less than adequate compensation for the purpose of becoming eligible for AFDC benefits. We agree with the federal and state agencies responsible for administration of the program that the transfer of assets rule is a permissible state anti-fraud measure, and we affirm the district court's decision upholding the rule.

## I.

The plaintiffs in this case, Anna R. Deel and Onnie Dale Adcock, applied for benefits under the Virginia Aid to Families with Dependent Children program. Their applications were denied on the basis of Virginia's transfer of assets rule. Deel's application was denied because she transferred a 59 acre parcel of land to her daughter and son-in-law for less than fair market value two days prior to applying for AFDC benefits. Adcock's request for benefits was rejected because she sold her interest in a mobile home to her brother-in-law for less than adequate compensation a short time after submitting her application. Administrative hearing officers and the State Board of Review denied the plaintiffs' administrative appeals.

Deel filed this suit against the Commissioner of the Virginia Department of Social Services and the Secretary of the United States Department of Health and Human Services in October 1985, seeking declaratory and injunctive relief. Adcock intervened as a plaintiff. The suit alleged that the transfer of assets rule violated the "availability principle" derived from the Social Security Act, which requires that only assets currently available to an applicant may be considered in determining eligibility.

There were no disputed factual issues, and both parties filed motions for summary judgment confined to the legal issue of the validity of the transfer of assets rule. The district court granted summary judgment for the defendants, holding that the Virginia rule was a valid state anti-fraud device, consistent with the Social Security Act. *Deel v. Lukhard*, 641 F.Supp. 784 (W.D.Va. 1986). A divided panel of this court reversed the district court, ordering the entry of summary judgment for the plaintiffs. *Deel v. Lukhard*, 830 F.2d 1283 (4th Cir. 1987). The court granted rehearing en banc, and we now affirm the judgment of the district court.[1]

## II.

The AFDC program was established by Title IV of the Social Security Act of 1935 to provide financial assistance to needy dependent children and the parents or relatives who live with them. *See* 42 U.S.C. § 601. AFDC aid is administered by the states, and the federal government reimburses participating states with a portion of the funds they expend. 42 U.S.C. § 603. In order to qualify for reimbursement, state plans must be approved by the Secretary of Health and Human Services. 42 U.S.C. § 601. The Secretary must approve state plans that satisfy the requirements for plan administration and recipient eligibility specified in 42 U.S.C. § 602(a). 42 U.S.C. § 602(b).

The Secretary has approved Virginia's AFDC plan as consistent with section 602 of the Social Security Act. One aspect of the plan approved by the Secretary is the transfer of assets rule at issue here. This regulation disqualifies an applicant from

---

[1] At the district court level, Deel and Adcock filed an amended complaint seeking relief for themselves and a class consisting of persons affected by the Virginia transfer of assets rule. Because of an absence of facts common to the proposed class, the district court denied class certification. We find no reason to disturb the denial of class certification on appeal.

receiving AFDC benefits for a specified period of time if the applicant "improperly disposes of his/her legal or equitable interest in real or personal property without adequate compensation within two years of application" for the purpose of becoming eligible for benefits.[2] The presumption that the transfer was improper is a rebuttable one. An applicant will not be disqualified from receiving benefits due to a transfer for inadequate compensation if the applicant can show that the transfer was not made for the purpose of establishing AFDC eligibility and can show that other resources were available at the time of the transfer to meet the applicant's needs. *See* Virginia ADC Manual § 303.5(A). Transfers for fair market value have no effect on an individual's AFDC application. *Id.* at § 303.5(C).

Plaintiffs contend the transfer of assets rule violates the AFDC specification in 42 U.S.C. § 602(a)(7). Section 602(a)(7)(A) provides that state AFDC administration "shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children." Current federal AFDC regulations require that in determining eligibility, state plans must provide that

> Income ... and resources available for current use shall be considered. To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.

45 C.F.R. § 233.20(a)(3)(ii)(D) (1986). Courts have construed this language, in conjunction with legislative history and administrative regulations, to stand for the proposition that AFDC eligibility determinations may be based only on assets that are actually available to the applicant for assistance. *See, e.g., Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985); *Bell v. Massinga,* 721 F.2d 131, 133 (4th Cir.1983). The purpose that courts

---

**2.** The Virginia transfer of assets rule provides: TRANSFER OF PROPERTY—An applicant for ADC is ineligible for a specified period of time if he/she transfers or otherwise improperly disposes of his/her legal or equitable interest in real or personal property without adequate compensation within two years of application for ADC. A recipient is ineligible for a specified period of time if an improper transfer or other improper disposition of legal or equitable interest in real or personal property occurred within two years of discovery of the transfer or disposition. An improper transfer of property will result in the ineligibility of the assistance unit for two years from the date of transfer if the uncompensated value was $12,000 or less. The period of ineligibility will be increased two months for $1,000 or part thereof of uncompensated value in excess of $12,000. The amount of the uncompensated value is the fair market value or the disputed value per 303.4 of the property or the client's interest in the property less the amount of any compensation received for the property. Exceptions to this provision occur when:
A. A transfer of property was not made in an effort to become or remain eligible for ADC. It will be the responsibility of the client to establish that such a transfer was not made in an effort to qualify for ADC. The client must provide objective evidence that the transfer was made exclusively for another purpose. A subjective statement of intent or ignorance of the property transfer provision is not sufficient. The client must provide evidence that other resources were available, at the time of transfer, to meet the needs of that client.
B. Retention of the property would have no effect on eligibility.
C. The transfer of the property resulted in compensation to the client which approximates the fair market value of the property. This compensation can be in the form of money, goods, or services. The value of the goods and services must be reasonable for the community. The value of services provided by a member of the immediate family must be at a reasonable rate established prior to receipt of the services.
D. Payment has been made on the cost of medical care which approximates the equity value of the property.
E. Disposition was the result of actions by another person, except a legal guardian, committee, or power of attorney, who for any reason, obtained the property without the client's full understanding of the action.
In cases where the applicant/recipient is the caretaker relative other than the parent (non-legally responsible relative), this policy affects only the caretaker. The children's eligibility would not be affected by any transfer or disposition of the property.
Virginia ADC Manual § 303.5.

have long attributed to this limitation on state AFDC policy, commonly known as the availability principle, is "to prevent the States from relying on imputed or unrealizable sources of income artificially to depreciate a recipient's need." *Turner,* 470 U.S. at 201, 105 S.Ct. at 1147.

## III.

Plaintiffs contend that the availability principle requires that Virginia's transfer of assets rule be struck down as inconsistent with the Social Security Act. We do not agree. The analysis of this case presented by the plaintiffs runs counter to the approach to state AFDC initiatives set forth by the Supreme Court. Further, plaintiffs' argument rests on a rigid view of the availability principle that ignores both the source of the principle and the policy that it seeks to advance.

## A.

The proper starting point for review of any state initiative in AFDC administration is a recognition of the fact that AFDC is a "scheme of cooperative federalism." *King v. Smith,* 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). AFDC is largely financed by the federal government, but the states bear the primary responsibility for administering the program. This is reflected in the AFDC regulations, which give states authority to:

> Impose conditions upon applicants for and recipients of public assistance which, if not satisfied, result in the denial or termination of public assistance, if such conditions assist the State in the efficient administration of its public assistance programs, or further independent State welfare policy, and are not inconsistent with the provisions and purposes of the Social Security Act.

45 C.F.R. § 233.10(a)(1)(ii)(B) (1986). It has long been recognized that "the area of greatest flexibility allowed the ... States is in the determination of eligibility requirements for recipients." U.S. Advisory Commission Report on Intergovernmental Relations, Statutory and Administrative Con-

trols Associated with Federal Grants for Public Assistance 30 (1964).

The Supreme Court has emphasized the value of the state role in AFDC administration. In *New York State Department of Social Services v. Dublino,* 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), for example, the Court upheld New York AFDC rules requiring able applicants to register for training and employment against a claim that the rules conflicted with federal law. The Court stated that "[t]he problems confronting our society in [the area of welfare administration] are severe, and state governments, in cooperation with the Federal Government, must be allowed considerable latitude in attempting their resolution." *Id.* at 413, 93 S.Ct. at 2913. The Court's opinion in *Dublino* underscores the fact that Congress cannot prescribe every detail of a program as complex as AFDC. If it could, state agencies would serve no independent purpose. The reality, however, is that state flexibility allows the development of specifically tailored solutions to specific problems, and provides fifty state proving grounds in which the efficacy of administrative innovations can be tested. This reality in turn underlies the Court's admonition that state rules are not to be lightly displaced:

> If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intent to do so. The exercise of federal supremacy is not lightly to be presumed.

*Id.* (quoting *Schwartz v. Texas,* 344 U.S. 199, 202–03, 73 S.Ct. 232, 235, 97 L.Ed. 231 (1952)).

Plaintiffs argue that the deferential approach of *Dublino* does not apply in a situation where a state initiative conflicts with federal law, as they contend that the transfer of assets rule does here. But this contention simply begs the question. *Dublino* does not apply only after a state initiative has been found to conform with federal law. Rather, it sets forth the analysis that determines whether conformi-

ty exists in the first place. Plaintiffs' theory of this case is that the transfer of assets rule is invalid in the absence of a specific congressional authorization for it. The proper approach, however, is to presume that state initiatives are valid in the absence of a clear statement of congressional disapproval. In this case, the Supreme Court's holding in *Dublino* requires that we ask whether there has been a "clear manifestation" of congressional intent to forbid a state transfer of assets rule such as that before us here. The nature and purpose of the availability principle reveal no such intent.

## B.

The availability principle serves an important function in welfare administration. That function, however, has no relation to the transfer of assets rule at issue here. The availability principle prevents states from denying AFDC benefits on the basis of income or resources imputed to an applicant, but never really available for the applicant's use. The transfer of assets rule, on the other hand, deals by definition with an applicant who *did* have property but chose to give it away in order to qualify for undeserved benefits.

The purpose served by the availability principle has been clear from its inception. The principle "traces its origins to congressional consideration of the 1939 amendments to the [Social Security Act]." *Turner*, 470 U.S. at 200, 105 S.Ct. at 1147. In the debate over those amendments, members of Congress expressed concern that states not assume the availability of income from potential sources, such as children, who might not actually contribute. *See* 3 Hearings Relative to the Social Security Act Amendments of 1939 Before the House Committee on Ways and Means, 76th Cong., 1st Sess. 2254 (1939) (testimony of Arthur Altmeyer, Chairman of the Social Security Board); 84 Cong.Rec. 6851 (1939) (statement of Rep. Poage). Shortly after the amendments were passed, these congressional concerns were incorporated in the federal guidelines for AFDC administration, and have continued to be endorsed

by AFDC administrators. *Turner*, 470 U.S. at 200–01, 105 S.Ct. at 1147–48.

Applications of the availability principle have thus been consistent with the purpose that the rule seeks to achieve—precluding the fictional imputation of income to AFDC applicants from relatives and housemates who never actually contribute to the AFDC assistance unit. *See, e.g., Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). In each of these cases the Supreme Court dealt with state rules that imputed income to the AFDC recipient from a man living in the household despite the fact that the man had no legal obligation to provide support. Those state rules thus potentially reduced the recipient's aid on the basis of funds that the recipient never had. As the Court has described the principle, it has "served primarily to prevent the States from conjuring fictional sources of income and resources by imputing financial support from persons who have no obligation to furnish it or by overvaluing assets in a manner that attributes nonexistent resources to recipients." *Turner*, 470 U.S. at 200, 105 S.Ct. at 1147.

No such "conjuring of fictional resources" is involved in the transfer of assets rule at issue here. Rather than basing eligibility determinations on assets that the applicant never had, the rule disqualifies applicants who *did have* assets, and voluntarily transferred them to a friend or relative so as to receive AFDC rather than expend the assets. The rule is a widely used state measure aimed at what essentially is fraud against the AFDC system, and is not the type of provision at which the availability principle is aimed. Indeed, the best evidence of congressional intent suggests that transfer of assets rules are consistent with federal AFDC policy. The prevention of fraud is an accepted feature of welfare administration, and anti-fraud measures are in fact required by regulation. *See* 45 C.F.R. § 235.110 (1986). Congress' receptivity to transfer of assets rules themselves can be seen from the fact

that it has specifically endorsed such a rule in the context of the Medicaid program. *See* 42 U.S.C. § 1396p(c)(1). Recent changes in the Supplemental Security Income program also now require the Secretary of Health and Human Services to collect asset transfer data from SSI applicants that later can be used in evaluating Medicaid eligibility. *See* 42 U.S.C. § 1382b(c)(1).

Plaintiffs nonetheless argue that the transfer of assets rule is invalid because descriptions of the availability principle are often phrased as requiring that only "actually available" assets be used in determining eligibility. They contend that assets an applicant has chosen to give away are no longer "available" in a literal sense and thus consideration of them is improper. We are not persuaded, however, that the availability principle should be applied in such a wooden fashion to reach a result that appears unconnected, if not contrary, to the congressional intent that the principle is meant to promote.

■ The availability principle is simply not the clear-cut statutory rule of "literal availability" that the plaintiffs claim. Indeed, the principle is not a statutory rule at all in the usual sense. The language of the statute from which the rule is derived certainly does not define its scope, as it provides only that states "shall, in determining need, take into account any other income and resources of any child or relative claiming aid to families with dependent children." 42 U.S.C. § 602(a)(7)(A). The availability principle is not a clear congressional command, but a gloss on the AFDC administrative scheme that is "derived from judicial and administrative interpretations of the statutory purposes of the ADC program." *Davis v. Lukhard,* 788 F.2d 973, 979 (4th Cir.1986). The principle is firmly accepted as a part of welfare administration, but because it is a judicially imposed limitation, courts have an obligation to apply it only in cases where its purposes would be served.

Prior cases confirm that the principle is to be given principled rather than rigid application. The Supreme Court, for example, has held that states may include mandatory tax withholdings in income for the purpose of determining AFDC eligibility despite the fact that the withheld amounts were never actually "available" for use. *See Turner,* 470 U.S. at 201–02, 105 S.Ct. at 1147–48; *see also Bell v. Massinga,* 721 F.2d 131 (4th Cir.1983). The Fifth Circuit, on facts that provide an instructive analogy to these, has held that states may recoup AFDC overpayments despite the fact that the amounts overpaid had been spent, and were no longer actually available to the recipients. *Jacquet v. Westerfield,* 569 F.2d 1339 (5th Cir.1978). The court held that the availability principle was not violated because, unlike the situations in *King, Van Lare,* or *Lewis,* the recipients had possessed and disposed of the funds. *Id.* at 1343.

■ We hold, therefore, that the scope of the availability principle does not extend to the Virginia transfer of assets rule. We base this view on a recognition both of the important policy embodied in the principle and of the mischief that would flow from a contrary result. *See generally Deel,* 830 F.2d at 1291–95 (Wilkinson, J., dissenting); *Randall v. Lukhard,* 729 F.2d 966, 969–71 (4th Cir.1984) (Murnaghan, J., dissenting). To extend the principle in the manner suggested by the plaintiffs would allow a recipient to "acquire fraudulently more than his entitlement at the expense of other families benefitting from the AFDC program," *Jacquet,* 569 F.2d at 1343; *Rinefierd v. Blum,* 66 A.D.2d 351, 412 N.Y.S.2d 526, 529–30 (1979), in the absence of any evidence that Congress intended such a result.

The principal dissenting opinion concludes by regretting that children may be "left without the assistance that Congress intended for them" because of the fact that a parent has defrauded the AFDC program. The dissent ignores the fact that eligibility under the AFDC program has historically been premised upon the household as the basic unit of assistance. Indeed, it would be difficult to extend the dissent's logic without extensively restruc-

turing the operative assumptions of the statute.

### IV.

Two amendments to the AFDC statute further support our conclusion that the transfer of assets rule is compatible with the congressional welfare policy which the availability principle is meant to reflect. These amendments provide evidence of the validity of transfer of assets rules that was not present when this court last examined such a rule in *Randall v. Lukhard,* 729 F.2d 966 (4th Cir.1984). Contrary to the suggestion in the principal dissenting opinion, we have considered the *Randall* precedent and we conclude that these amendments demonstrate a congressional view of the availability principle substantially at odds with that of the *Randall* decision. The amendments are part of the Omnibus Budget Reconciliation Act of 1982 (OBRA) and the Deficit Reduction Act of 1984 (DEFRA). Each modified AFDC eligibility determinations, and provides a good source of guidance on congressional AFDC policy.

OBRA and DEFRA furnish strong indications that the Virginia rule furthers congressional intent. The legislative history of the OBRA provisions reveals that Congress intended that families not be allowed to receive AFDC when they have "resources upon which they could reasonably be expected to draw." S.Rep. No. 139, 97th Cong., 1st Sess. 503, reprinted in 1981 U.S.Code Cong. & Admin.News 396, 769. This is precisely the policy that the transfer of assets rule attempts to enforce by preventing applicants who have resources from making a fictive legal transfer in order to qualify for AFDC. Congressional policy similarly demands that AFDC funds be "restricted to those most in need." *Id.* The transfer of assets rule promotes this policy also, for the use of limited AFDC funds by those who have improperly disposed of assets necessarily deprives those in greater need.

A provision of the DEFRA amendment also illuminates congressional attitudes toward AFDC. This provision allows families to continue to receive AFDC while they are making "good faith efforts" to dispose of real property that would make them ineligible for aid. *See* 42 U.S.C. § 602(a)(7)(B)(iii). Once the assets are sold, however, AFDC benefits that would not have been paid had the assets been sold earlier are treated as overpayments. *Id.* The provision essentially allows recipients to take an "advance" in anticipation of a later sale of assets.

The requirement of "good faith" in the amendment suggests that Congress intends that applicants not be allowed to render themselves eligible for aid through bad faith transfers to relatives or friends for inadequate compensation. Further, invalidation of the transfer of assets rule would provide a ready means to circumvent the scheme established by DEFRA. If applicants can render themselves eligible for aid through a fraudulent transfer, then they may avoid both the DEFRA obligation to make "good faith efforts" to sell the property, and the obligation to "repay" the program through the recoupment of benefits that would be deemed overpayments after the sale.

Plaintiffs argue that the amendments, specifically DEFRA, do not provide sufficient support for the transfer of assets rule. They contend that the DEFRA property disposal provision simply has nothing to do with the transfer of assets provision. They emphasize that the DEFRA provision deals only with real property, and allows for expanded eligibility in some circumstances, while the Virginia rule narrows eligibility on the basis of transactions involving both real and personal property.

Plaintiffs' argument, however, only provides a further illustration of their general approach to the case. It assumes that the state transfer of assets provision must be invalidated without specific congressional approval for it. As we have discussed here, however, this is not the approach to state eligibility rules that the Supreme Court has endorsed. We examine the amendments not for specific authorization for the Virginia rule, but for evidence of the proper scope of the availability principle. When considered on that basis, the

OBRA and DEFRA amendments support the view that Congress did not intend to undermine state efforts to prevent fraud against the funds of the program that it had enacted.

### V.

The deference owed the Secretary of Health and Human Services' position in this case provides an equally important reason for our decision. The Secretary has the responsibility for reviewing every state AFDC plan to ensure that it complies with the statutory requirements of section 602(a)(7). The exercise of this responsibility over time affords the Secretary an expertise in the area that is entitled to judicial respect.

The Secretary has observed state transfer of assets rules for years, and has consistently approved them. *See* U.S. Department of Health and Human Services, Characteristics of State Plans for Aid to Families with Dependent Children (1976); *Id.* (1983); *Id.* (1984); *Id.* (1985); *Id.* (1987). The consistency of the Secretary's approval commands that we give it substantial deference. *See, e.g., Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974). The plaintiffs contend that deference is unwarranted because the Secretary has not embodied the agency's support for transfer of assets rules in a regulation. Promulgation of a regulation, however, is not a prerequisite for according respect to an agency interpretation. *See FDIC v. Philadelphia Gear Corp.,* 476 U.S. 426, 106 S.Ct. 1931, 1938–39, 90 L.Ed.2d 428 (1986). In light of the consistency of the Secretary's position, we are persuaded that it is entitled to the "considerable weight [that] should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

In addition to the Secretary's expertise in welfare administration, the need of the states for stable rules of AFDC administration supports deference here. Thirty-five states employ some form of transfer of assets rule in their AFDC programs, and rejection of the Secretary's longstanding position would unsettle the law in this area, posing the risk of ad hoc judicial review of AFDC rules in numerous jurisdictions. A variety of state initiatives may well benefit the AFDC program; an unpredictable patchwork of federal court decisions based on the availability principle would not.

Our conclusions have been well stated in an opinion rendered in another case dealing with a Virginia AFDC rule: "In a statutory area as complicated as this one, the administrative authorities are far more able than this Court to determine congressional intent in light of experience in the field. If the result is unacceptable to Congress, it has only to clarify the situation with language that unambiguously specifies its intent." *Lukhard v. Reed,* 481 U.S. 368, 107 S.Ct. 1807, 1816, 95 L.Ed.2d 328 (1987) (Blackmun, J., concurring in the judgment).

### VI.

Leaving aside the validity of transfer of assets rules in general, the plaintiffs' final challenge is to the particular provisions of the Virginia rule. They assert that the provisions of the rule are overbroad and overly rigid, and hence violative of due process. Examination of the provisions of the rule and prior cases reveals that this contention is without merit.

We note at the outset that the Virginia rule does not, unlike some transfer of assets rules that have been invalidated by district courts, disqualify AFDC recipients on the sole basis of a property transfer for inadequate consideration. *Cf. Udina v. Walsh,* 440 F.Supp. 1151 (E.D.Mo.1977); *Buckner v. Maher,* 424 F.Supp. 366 (D.Conn.1976); *Owens v. Roberts,* 377 F.Supp. 45 (M.D.Fla.1974). The Virginia rule is aimed at transfers made *for the purpose* of receiving AFDC benefits to which the applicant is not entitled. It should also be noted that plaintiffs' characterization of the transfer of assets provision as Draconian is not justified. The rule, for example, operates within a statu-

tory scheme that excludes from eligibility requirements the applicant's home and one automobile. *See* 42 U.S.C. § 602(a)(7)(B); 45 C.F.R. § 233.20(a)(3)(i) (1986). The facts of this case illustrate that the rule does not, as plaintiffs contend, threaten to interfere with efforts by applicants to remain in their homes. Deel's disqualification stemmed from a transfer of a 59 acre parcel of land, and Adcock's from the transfer of a mobile home in which she did not reside.

■ Plaintiffs' chief objection to the Virginia rule appears to be the requirement that applicants provide evidence that other resources were available to meet their needs at the time of the challenged transfer. We believe, however, that this requirement constitutes a reasonable means of identifying improper transactions. There is no apparent reason why a person without other resources would transfer assets for less than their worth unless the transfer was part of a plan to become eligible for benefits. Of course, in some instances an applicant might be forced by circumstances to sell assets at an unfavorable price in order to meet the needs of an emergency. Where this occurs, however, Virginia allows applicants to challenge state valuations of the transferred property on the basis of "current market conditions." *See Davis v. Lukhard,* 788 F.2d 973, 982–83 & n. 8 (4th Cir.1986).

The differences expressed in Chief Judge Winter's dissenting opinion with Virginia's findings in the Adcock case do not represent a question of constitutional magnitude. We cannot accept his argument that the rule's creation of a presumption that a transfer for inadequate compensation was made to qualify for benefits is constitutionally infirm. As discussed above, the presumption is a rebuttable one, and the means by which the presumption may be rebutted are reasonable. Clearly, the rule does not offend equal protection or due process. *See Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).

### VII.

Regard for the state role in AFDC administration, fidelity to the purposes of the availability principle, and respect for the view of the agency overseeing AFDC administration all indicate that the Virginia transfer of assets rule is a valid state provision. Plaintiffs' view that a federal statute or regulation must authorize every state initiative in this field would impair the cooperative role of the states in the AFDC program. Congress envisioned such a role for the states, and we decline to restructure the program that Congress has enacted.

The decision of the district court is AFFIRMED.

ERVIN, Circuit Judge, dissenting:

The resolution of this case requires the court to determine if Virginia's transfer of assets rule is contrary to federal law. For the reasons explained in the majority panel opinion at 830 F.2d 1283 (CA4 1987), I remain convinced that Virginia's rule impermissibly denies public assistance to children that Congress intended to benefit from AFDC funds. Because the reasons for my disagreement on the merits have been amply stated, I write here only to note my concerns with the analysis adopted by the majority today. My concerns involve the fundamentals of how this court should interpret congressional action and how this court should treat its own precedents.

Today the majority concludes that Virginia's AFDC transfer of assets rule does not violate the availability principle. Just five years ago, however, this court concluded that a substantially identical transfer of assets rule did violate the availability principle. In *Randall v. Lukhard,* 709 F.2d 257 (CA4 1983), *relevant holdings adopted on rehearing en banc,* 729 F.2d 966 (CA4 1984), *cert. denied,* 469 U.S. 872, 105 S.Ct. 222, 83 L.Ed.2d 152 (1984), this court considered "challenges to the Virginia Medicaid program's former and current 'transfer of assets' eligibility rules, as applied to Medicaid applicants and recipients from April 24, 1978." *Randall,* 709 F.2d at 259. Virginia's former rule was made part of the state's Medicaid Plan in 1972. Plain-

tiffs in that case brought suit in 1980 seeking, inter alia, a declaration that the rule was inconsistent with the Social Security Act. Shortly thereafter, however, Congress enacted the Boren–Long Amendment to the Social Security Act (Pub.L. No. 96–611, § 5, 94 Stat. 3567 (1980), codified at 42 U.S.C. §§ 1382b(c) and 1396a(j)), which explicitly authorized states to adopt transfer of assets rules for Medicaid eligibility. Virginia consequently amended its former rule in 1981 to conform to the requirements of the Boren–Long Amendment. See *Randall*, 709 F.2d at 261–62, 265–66.

The *Randall* court unambiguously held that Virginia's use of transfer of assets· eligibility rules prior to the enactment of the Boren–Long Amendment was contrary to federal law. The court stated that Virginia's former rule violated the availability principle "by including resources no longer 'actually available' to the applicant or recipient. It is apparent that resources that were previously irrevocably transferred to another person, regardless of the amount of compensation received, simply are no longer actually available." *Randall*, 709 F.2d at 263–64 (footnote omitted). Virginia's post-Boren–Long rule was subsequently upheld by this court on rehearing *en banc*. *Randall v. Lukhard*, 729 F.2d 257 (CA4 1984).

The issues raised by Virginia's AFDC rule are substantially identical to those raised by Virginia's pre-Boren–Long Medicaid rule. Astonishingly, though, the majority chooses to completely ignore *Randall*. As a result, today's decision and *Randall* are patently inconsistent. It makes no sense for this court to hold that resources which are not "actually available" if an individual applies for Medicare become "actually available" if that person applies for AFDC. Unless good reason exists for distinguishing between the present case and *Randall* this court's prior decision should either control this case or *Randall* should be overruled. I can think of no better way to produce "an unpredictable patchwork of federal court decisions based on the availability principle" (*supra*, at 1087), a result which the majority professes to abhor, than for this court to

fail to follow its own controlling precedents.

Along with the majority's disregard of precedent, the court's interpretation of congressional silence is equally troubling. The only salient difference between today's case and *Randall* is that in the latter case, Congress had explicitly authorized transfer of assets rules for Medicaid after 1980. Incredibly, the majority relies on the Boren–Long Amendment as evidence of Congressional "receptivity" to transfer of assets rules generally. *Supra*, at 1084. Such reliance is mistaken. The Boren–Long Amendment is only applicable to Medicaid and Supplemental Security Income Programs. The fact that Congress has authorized transfer of assets rules in one public assistance program is not evidence that. Congress approves or endorses the use of such rules in other programs. Quite to the contrary, explicit congressional approval in one context makes congressional silence in a closely related context all the more meaningful. The Boren–Long Amendment indicates that Congress is aware of the potential benefits and detriments of transfer of assets rules and has decided to permit the use of such rules in situations where it thinks appropriate. The decision today in essence broadens the Boren–Long Amendment to cover the AFDC program, a result which the 96th Congress clearly chose not to enact.

Indeed the Supreme Court recently criticized attempts to read congressional silence in the AFDC context as tacit authorization for policies expressly authorized in other federal aid programs. In *Lukhard v. Reed*, 481 U.S. 368, 107 S.Ct. 1807, 95 L.Ed. 2d 328 (1987), the Court considered whether personal injury awards were to be considered as income in determining AFDC eligibility. The Court flatly rejected the respondent's argument that since personal injury awards were expressly excluded from eligibility determinations in other benefits programs, such awards should be excluded under AFDC. "[T]he fact that Congress was silent in the AFDC statute but has elsewhere been explicit when it wished to exclude personal injury awards from in-

come tends to refute rather than support a legislative intent to exclude them from AFDC computations." *Reed*, 481 U.S. at 376, 107 S.Ct. at 1812, 95 L.Ed.2d at 337 (footnote omitted).

Subsequent legislative action also recommends proper respect for congressional silence. The 100th Congress recently reexamined state transfer of assets rules when it enacted the Medicare Catastrophic Coverage Act of 1988. Pub.L. No. 100–360, § 303, 102 Stat. 683 (1988). This current law restricts state agency discretion by exempting certain categories of assets and by promulgating a new, national rule for Medicaid Programs. See H.R.Rep. No. 105(II), 100th Cong., 2nd Sess. 73, *reprinted* in 1988 U.S.Code Cong. & Admin.News 803, 857, 896 ("[T]he Committee bill replaces the current law option with a uniform national policy, mandatory on all the States, that is specific to Medicaid eligibility and that reasonably relates the value of the resource improperly transferred to the period of denial of eligibility."). Contrary to the majority's assertion that "[t]he best evidence of congressional intent suggests that transfer of assets rules are consistent with federal AFDC policy" (*supra*, at 1084), the Medicare Catastrophic Coverage Act and the Boren–Long Amendment demonstrate that such rules are a subject of close Congressional attention and will be authorized and revised as Congress, rather than the states or the courts, sees fit.

Ignoring the dictates of precedent and Congressional silence, the majority instead relies upon deference to state administrative action to explain today's decision. The majority explains that in deciding the legality of Virginia's AFDC rule we are "to presume that state initiatives are valid in the absence of a clear statement of congressional disapproval...." *Dublino* [*New York State Dep't of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973)], "requires that we ask whether there has been a 'clear manifestation' of congressional intent to forbid a state transfer of assets rule such as that before us here." *Supra*, at 1084. I cannot agree with the application of *Dublino* to the present situation. In that case Justice

Powell, speaking for the Court, explained repeatedly that the narrow issue before the Court was "whether that part of the Social Security Act known as the Federal Work Incentive Program (WIN) *preempts* the provisions of the New York Social Welfare Law commonly referred to as the New York Work Rules." *Dublino*, 413 U.S. at 407, 93 S.Ct. at 2509 (emphasis added).

It is undisputed that this case does not involve a preemption issue. Thus the unusually great degree of caution which is warranted in preemption cases in order to avoid superseding "the exercise of the power of the state" (*Dublino*, 413 U.S. at 413, 93 S.Ct. at 2512, quoting *Schwartz v. Texas*, 344 U.S. 199, 202–203, 73 S.Ct. 232, 97 L.Ed. 231 (1952)), is not warranted here. The sole question here is whether or not Virginia's administrative action contravenes limitations which the state voluntarily submitted to by choosing to participate in the AFDC program.

Today's case differs from *Dublino* in another very important respect. In reading *Dublino* one cannot help but realize that the Supreme Court's deferential stance toward the New York work rules at issue derived in part from the nature of those rules. New York's work rules, while enforced through eligibility requirements, in no way altered the method for determining an AFDC applicant's available income or resources. Virginia's transfer of assets rule, on the other hand, is directed solely to redefining the resources to which the state will look in determining eligibility. While the AFDC program has always vested in state administrators great discretion in determining the levels of need and the amount of assistance under each state program (see, e.g., *Lukhard v. Reed*, 481 U.S. at 371, 107 S.Ct. at 1810, 95 L.Ed.2d at 333), the definition of income and resources which states must consider in determining eligibility has primarily been a federal prerogative.

*Dublino* is only one of many Supreme Court opinions that have dealt with the validity of state AFDC rules and a review of these other cases reveals that our highest court does not generally approach such

issues by presuming, as the majority does here, the validity of the state rule in question. For example, in *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), the court declared Alabama's "man-in-the-house" rule invalid. Far from presuming the validity of that rule, the court stated that "[t]he question for decision is whether *Congress* could have intended that a man was to be regarded as a child's parent" merely because of his cohabitation with the child's mother. *King*, 392 U.S. at 329, 88 S.Ct. at 2139 (emphasis added). Similarly, in *Heckler v. Turner*, 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985), the court looked to congressional intent, rather than relying on deference to state administrators, in ruling that tax withholdings must be considered as available income rather than as an employment related expense in determining AFDC eligibility.

While courts should, in appropriate circumstances, defer to administrative decision makers, the merits of this case require closer scrutiny. Let us not forget the real needs of those who Congress intended to benefit from AFDC funds—the children of our country who struggle against daily suffering born of poverty. Bearing in mind their plight, it is easy to understand why Congress has never given states the option to deny public assistance to children because of the foolishness of their elders. When a Medicaid recipient fraudulently transfers an asset, he or she will bear the consequences of a loss of eligibility. But when a parent fraudulently transfers a car or a mobile home, children who had no say in the transaction are, by the operation of Virginia's rule, left without the assistance that Congress intended for them. Such a result is not entitled to a presumption of validity premised on administrative deference. The legality of such a result must be

premised, if at all, on careful attention to precedent and Congressional intent.

For these reasons, and those previously articulated in the panel opinion at 830 F.2d 1283 (CA4 1987), I must respectfully dissent.

I am authorized to state that WINTER, Chief Judge, and PHILLIPS, Circuit Judge and SPROUSE, Circuit Judge, join in this dissent.

HARRISON L. WINTER, Chief Judge, dissenting:

Judge Ervin in the majority panel opinion and in his dissent to the majority's decision in the in banc rehearing has persuasively demonstrated why the judgment of the district court should be reversed. I concur in both opinions.

I write separately to say that I see another infirmity in the decision of the in banc court—one of constitutional magnitude. It is best exemplified by the case of Mrs. Adcock. She joined in the sale of a mobile home at a price which she thought was its actual fair market value. Virginia, however, thought otherwise, and it thus disqualified her for ADC benefits. In her case there is no evidence of fraud, and yet the Virginia transfer of assets rule is so broad that it penalizes the innocent as well as the wicked.[1]

If Virginia penalizes lack of business sophistication as well as actual fraudulent purpose, it is overly broad and, in my view, denies equal protection of the laws because it withholds a government benefit arbitrarily and without a rational purpose. *See Clark v. Jeter*, —— U.S. ——, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). *See also Schweiker v. Wilson*, 450 U.S. 221, 239–40, 101 S.Ct. 1074, 1085–

1. The majority asserts that a transfer for inadequate consideration creates only a rebuttable presumption that the transferor is ineligible for ADC benefits and that the presumption may be rebutted. The Virginia rule, however, places the burden of proof to rebut on the applicant for benefits, and it specifically states that "[a] subjective statement of intent or ignorance of the property transfer provision [the requirement

of adequate compensation] is not sufficient." For an unsophisticated transferor the opportunity to rebut is theoretical but not real. One can hardly imagine how an applicant can prove her own lack of knowledge about the real value of transferred property except by her own statement. In the real world, the presumption is conclusive.

86, 67 L.Ed.2d 186 (1981) (Powell, J., dissenting).

PHILLIPS, Circuit Judge, SPROUSE, Circuit Judge and ERVIN, Circuit Judge authorize me to say that they join in this dissent.