**James EMERSON, individually, and on behalf of all others similarly situated, Plaintiff,**

**v.**

**Ann WYNIA, in her official capacity as Commissioner of the Minnesota Department of Human Services, and Louis Sullivan, in his official capacity as Secretary of the United States Department of Health and Human Services, Defendants.**

**No. Civ. 4–89–1034.**

United States District Court, D. Minnesota, Fourth Division.

Jan. 10, 1991.

Patricia Marie Siebert, Laurie N. Davison, Minneapolis Legal Aid, Minneapolis, Minn., for plaintiff.

Hubert H. Humphrey, III, Minnesota Atty. Gen., and Patricia A. Sonnenberg, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendant Wynia.

Sheila Lieber, Dept. of Justice, Civil Div., Federal Programs Branch, Margot E. de Ferranti, Dept. of Justice, Civ. Rights Div., Washington, D.C., for defendant Sullivan.

## MEMORANDUM AND ORDER

### MacLAUGHLIN, District Judge.

This matter is before the Court on the parties' cross motions for summary judgment. Plaintiff's motion will be granted and defendants' motions will be denied.

## FACTS

The facts in this case are not in dispute. The plaintiff class in this action is composed of individuals who have been or will be denied or terminated from medical assistance because of defendant Wynia's policy of refusing to exclude court-ordered child support payments from countable income under the Minnesota Medical Assistance program. The named plaintiff James B. Emerson is 51 years of age and has multiple sclerosis; consequently he is unable to walk and uses an electric wheelchair. Plaintiff requires substantial medical care and a trained attendant to meet his basic daily needs. Plaintiff was divorced in July 1987 and both parties were represented by counsel. In the divorce decree, plaintiff was ordered to pay $200 per month in child support.

Plaintiff qualifies for medical assistance by "spending down" his income to the qualifying level set by the state.[1] Plaintiff's sole source of income is $863 per month in social security benefits. Until October 1, 1989, plaintiff's child support was deducted by the state in the calculation of plaintiff's monthly income. This deduction (along with other allowable deductions) would leave plaintiff with a countable monthly income of $611. The income level to qualify for Medicaid is $420 per month, so the plaintiff would be required to pay the first $191 in income for his medical care.

On September 23, 1989, plaintiff received notice that the state would no longer exclude court-ordered child support payments from determination of plaintiff's monthly income. This meant that plaintiff's monthly spend down to qualify for medical assistance would be $391. This would leave plaintiff with a monthly available income (after child support and medical assistance spend down) of $220, as compared to $420 before the state's policy was introduced. Plaintiff alleges that he is being placed in the position of choosing between defaulting on his court-ordered child support or forgoing his medical care.

Plaintiff began an administrative appeal which has been stayed pending the outcome of this action. There are no questions of material fact in conflict between the parties. The only issue for the Court to resolve is whether the state and federal defendants are appropriately fulfilling their statutory mandate to the medically needy.[2]

*Federal Statutory and Regulatory Framework*

This case centers on the question of how to determine the "income" of recipients of medical assistance. The medical assistance

---

1. The Minnesota Department of Human Services has established an income threshold to qualify for Medicaid. That level is $420 per month, so individuals whose income exceeds $420 per month must "spend down" to that level. For example, in this case the named plaintiff has a monthly income of $863. The income guidelines developed by the Department of Human Services allows a deduction for plaintiff's Medicare premium payment ($31.90 per month) and allows a General Income Disregard ($20.00 per month). The plaintiff has also received a deduction for his child support payments ($200.00 per month). This leaves him with a countable monthly income of $611.00. A person is eligible for medical assistance when his or her countable monthly income is $420.00. Plaintiff is $191.00 above the limit, so to qualify for medical assistance he must pay the first $191 in medical expenses each month.

2. This action was filed on November 29, 1989 by plaintiff James B. Emerson. Defendant Wynia moved for the inclusion of Louis Sullivan, Secretary of the United States Department of Health and Human Services (Secretary). Defendant Wynia, Commissioner for Human Services for the State of Minnesota, argued that the state's policy in question was a result of directives from the Secretary. The motion to add the Secretary as a necessary party was granted by the magistrate judge in an order dated February 20, 1990. Plaintiff moved on July 3, 1990 that this action be certified as a class action pursuant to Fed.R.Civ.P. 23 and the Court granted that motion.

program is designed to provide health care to persons whose income and resources are insufficient to pay for it themselves. *Atkins v. Rivera*, 477 U.S. 154, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986). A state is not required to participate in Medicaid, but once it chooses to do so, it must create a state plan that conforms to the requirements of the Medicaid statute and federal regulations. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36–37, 101 S.Ct. 2633, 2636–37, 69 L.Ed.2d 460 (1981). The participating state is required to provide Medicaid to "categorically needy" persons (*i.e.*, those receiving aid to families with dependent children (AFDC) or supplemental security income (SSI)). 42 U.S.C. § 1396a(a)(10)(A)(i). A state has the option of providing Medicaid coverage to, among others, aged, blind or disabled individuals whose income is too great to enable them to qualify for the "categorically needy" program. 42 U.S.C. § 1396a(a)(10)(C). This is the "medically needy" program.

The state must establish reasonable income standards for participation and permit recipients whose income exceeds the income standard to receive Medicaid after "spending down" to the income guideline. 42 U.S.C. § 1396a(a)(17). The "spend down" is the amount of medical expenses an individual must pay out of pocket before becoming eligible for Medicaid. *See* footnote 1 and 42 C.F.R. § 435.831.

The State of Minnesota provides Medicaid (known in Minnesota as "medical assistance") to medically needy aged, blind and disabled individuals and families. Minn.Stat. § 256B.055, subd. 7. The state requires that the income of the medically needy aged, blind and disabled be no more than 120 percent of the income for comparably sized AFDC families. Minn.Stat. § 256B.056, subd. 4.

Income eligibility in the medical assistance program is controlled by federal statute which requires:

A State plan for medical assistance must ... include reasonable standards ... [to] provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ... as would not be disregarded [under SSI and AFDC]....

42 U.S.C. § 1396a(a)(17)(B).

The Secretary has not developed regulations on how income should be calculated for the medically needy program. The Secretary has taken the position that income is defined under the AFDC and SSI programs. Memorandum of Secretary Sullivan in Support of Motion for Summary Judgment at 5.

Congress amended the Medicaid statute in 1982 to require states to use "the same methodology" for the medically needy as for the categorically needy. The Secretary interpreted this to require states to use the same disregards and deductions to determine financial eligibility as those utilized in the AFDC and SSI cash assistance programs. In response, in 1984, Congress instituted a moratorium against disapproving state plans more flexible (*i.e.*, less restrictive) than the AFDC and SSI methodologies. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 2373(c)(1), 98 Stat. 494, 1112 (1984).

In response to the Secretary's restrictive interpretation of the 1984 statutory amendments, Congress passed additional legislation in 1987. Medicare and Medicaid Patient and Program Protection Act, Pub.L. No. 100–93, § 9, 101 Stat. 680, 695 (1987). The Medicare Catastrophic Coverage Act of 1988 made this moratorium permanent by allowing states to be less restrictive, but not more restrictive than the AFDC and SSI methodologies. 42 U.S.C. § 1396a(r)(2).

In Minnesota, court-ordered child support payments had been excluded from consideration as "income" of the payor under the medically needy program since at least January 1, 1972. This policy changed when the State of Minnesota was directed by the Secretary to alter its medical assistance income formula so that it was the same as the AFDC and SSI formulas. The state defendant initiated a policy review which resulted in a change of policy requiring

that court-ordered child support payments be counted as income.

DISCUSSION

## I. *Standard of Review*

 In reviewing a statute the Court has final authority on all issues of statutory construction. The Supreme Court has noted:

> The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.

*I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 447, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987) (citations omitted). If the Court finds that Congress has not directly addressed the question at issue, then the Court must determine whether the agency's regulation is based on a permissible construction of the statute. *Cardoza–Fonseca,* 480 U.S. at 445 n. 29, 107 S.Ct. at 1220 n. 29. The Court should give deference to the Secretary's interpretation of the Act, but deference is inappropriate if the Secretary's view conflicts with the Medicaid statute. *Washington v. Bowen,* 815 F.2d 549, 554 (9th Cir.1987).

In construing a statute the words should be interpreted through their ordinary meaning. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). A court should also decline to adopt a strained reading of a statute which renders one part a mere redundancy. *Beef Nebraska, Inc. v. United States,* 807 F.2d 712 (8th Cir.1986).

## II. *Argument*

### A. Statutory Analysis

Plaintiff argues that 42 U.S.C. § 1396a(a)(17)(B) requires the exclusion of court-ordered child support from the calculation of "income." Plaintiff notes that the statute has two parts. The statute permits only the counting of (1) "income and resources ... available to the applicant or recipient," and (2) "as would not be disregarded [under SSI and AFDC]." Plaintiff contends that the state should look at the income available and exclude any income disregarded under the SSI and AFDC programs.

The plaintiff argues that the relevant legislative history indicates only income which is *actually available* should be considered as income.

The Senate report states:

> (d) Determination of need for medical assistance.... Another provision is included that requires States to take into account only such income and resources as (determined in accordance with standards prescribed by the Secretary), are *actually available* to the applicant or recipient and as would not be disregarded ... in determining the eligibility for and the amount of aid or assistance in the form of money payments for any such applicant or recipient under the title of the Social Security Act.... Income and resources taken into account, furthermore, must be reasonably evaluated by the States. These provisions are designed so that the States will not assume the availability of income which may not, in fact, be available or overevaluate income and resources which are available. Examples of income assumed include support orders from absent fathers, which have not been paid or contributions from relatives which are not in reality received by the needy individual.

S.Rep. No. 404, 89th Cong., 1st Sess. 78 (1964), *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 2018 (emphasis added).

Plaintiff argues that the insertion of the word "actually" next to "available" in the report indicates Congress intended that income such as court-ordered support orders should not be taken into account. Defendant Sullivan argues that Congress merely wanted states to exclude non-existent income. For example, states should not assume that relatives would make contributions to a disabled person.

The Court finds plaintiff's position is supported by the language of the congressional report. First, the conference committee report adds the word "actually" next to the word "available." The defen-

dants' interpretation renders the term "actually" redundant. Under defendants' view Congress merely wanted states to determine that income was in existence (*i.e.*, not imaginary). It is possible, however, for income to be "real," but not available for use by the party.[3] Secondly, the legislative history indicates that income that is available should not be "over evaluate[d]."

Subsequent legislative reports and enactments support this interpretation of the "availability" principle. In particular the House Budget Committee Report on the Omnibus Budget Reconciliation Act of 1986 provides legislative support for plaintiff's position. The House in 1986 passed an amendment to clarify the counting of income in the calculation for spousal and child support. The House noted:

> The Committee finds the HCFA's position untenable. The Committee fails to understand how income which must, by law, be used for the support of someone other than the Medicaid beneficiary can be "available" to him or her. The very purpose of a requirement at section 1902(a)(17)(B) of the Act that States take into account only such income and resources as are available is to prevent them from including in income the actual amounts that an applicant or beneficiary is legally compelled to use for someone else's support.... Title XIX forbids HCFA—or the States—from requiring beneficiaries to make the Hobson's choice of either using all of their income to meet their own needs as a condition of Medicaid eligibility, or meeting their court-ordered support obligations and doing without medically necessary care.

H.Rep. No. 99–727, 99th Cong., 2d Sess. 109–10, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3607, 3699–3700.[4]

Recent congressional action demonstrates that excluding child support payments is not forbidden by the statute. There has been an ongoing conflict between state Medicaid plans and the Secretary. The Secretary has been denying states the right to change their income exclusion criteria if they did not match the criteria in the AFDC/SSI program. Congress responded to this by requiring the Secretary to accept changes in the income qualification for Medicaid so long as they were no more restrictive than AFDC or SSI. 42 U.S.C. § 1396a(r)(2)(A). This demonstrates that the Secretary is incorrect in maintaining that the AFDC/SSI regulations are controlling.

Defendants argue that their interpretation of the legislative history is supported by the decision in *Heckler v. Turner*, 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985). In *Turner*, the court held that mandatorily withheld payroll deductions were "available" income to AFDC recipients, and that income deductions should come from gross as opposed to net income. *Turner* traces the availability principles of the Social Security Act of 1939. *Turner*, 470 U.S. at 200–01, 105 S.Ct. at 1147. Defendants' use of *Turner* is misplaced. First, the AFDC statute, unlike the Medicaid statute, does not contain the availability principle to evaluate "income." *Deel v. Jackson*, 862 F.2d 1079 (4th Cir. 1988). To the extent the availability is considered in connection with AFDC income eligibility, it is a regulatory interpretation. The principle of "actual availabili-

---

**3.** The court in *Cervantez v. Sullivan*, 719 F.Supp. 899 (E.D.Cal.1989) found that income that was garnished for child support was not available to the plaintiff. The federal government argued that the money was not "imaginary" and therefore should be counted as income. The court disagreed, citing a long list of Ninth Circuit cases, finding that the income must be available for the "basic needs" of the plaintiff. *Cervantez*, 719 F.Supp. at 913.

**4.** The Senate had not considered the issue and the House amendment was not included in the Omnibus Budget Reconciliation Act. H.Conf.R.

No. 99–1012, 99th Cong., 2d Sess. 223, 398, *reprinted in* 1986 U.S.Code Cong. & Admin.News 3868, 4043. A close reading of the Committee Report suggests that the failure of Congress to consider the amendment was due not to acquiescence to HCFA's position, but due to the committee's belief that such income was already excluded by statute. The United States Court of Appeals for the Ninth Circuit later reviewed the issue and found that child support payments were not available income under the Medicaid program. *California Department of Health v. Secretary for Health and Human Services*, 823 F.2d 323, 328 (9th Cir.1987).

ty" with regard to Medicaid is strongly indicated in the legislative history and the statute itself. Secondly, the *Turner* court relied on a subsequent congressional amendment to the AFDC act that indicated gross income was the appropriate starting point for calculating income disregards. *Turner*, 470 U.S. at 187, 105 S.Ct. at 1140. Thus, the *Turner* Court's evaluation of AFDC regulations is not applicable in this case.

 In summary, in determining a recipient's income, the legislative history supports the plaintiff's argument that under the statute the income should be "actually available." The Secretary's reading of the statute is not credible and is contrary to congressional intent. The plain language of the statute, the legislative history and the continual congressional attack on the Secretary's narrow interpretation best supports the plaintiff's position.[5]

### B. Case Law

The leading authority on the question of Medicare income qualification is *Department of Health, State of California v. Secretary of HHS*, 823 F.2d 323 (9th Cir. 1987). In *Department of Health*, the State of California changed its Medicaid income qualification regulations. First, the state decided to calculate an institutionalized person's income using California community property law. The intent was to protect a non-institutionalized spouse from being impoverished by the medical assistance "spend down" requirements. *Department of Health*, 823 F.2d at 325. Second, the state wanted to exclude court-ordered child support from the calculation of income available to medical assistance recipients. *Department of Health*, 823 F.2d at 325. The Secretary denied the request to change the income qualifications.

The United States Court of Appeals for the Ninth Circuit held that court-ordered child support could not be considered income. First, the court analyzed the Medicaid statute and regulations and found that the statute did not require the state to have exactly the same eligibility requirements as the AFDC/SSI program. *Department of Health*, 823 F.2d at 328.

Second, the court examined its decision in *Whaley v. Schweiker*, 663 F.2d 871 (9th Cir.1981). In *Whaley*, the court held that pension benefits paid to a disabled veteran for the support of his minor children were not "available" income to the veteran. *Whaley*, 663 F.2d at 875. The Secretary argued that the social security check was given directly to the veteran, so the check was in control of the veteran, and was available income. The court rejected this contention and held that funds which were allocated for dependents were not available income. *Whaley*, 663 F.2d at 875.

The court in *Department of Health* found the cases to be analogous because:

[i]n *Whaley* the Secretary contended that the dependents' share of Whaley's check should be considered available to Whaley because he could not be compelled to spend the income on behalf of his children. Unlike the situation in *Whaley*, a court has several sanctions it may impose if a person defaults on support payments. Thus, an even stronger argument can be made that income earmarked for support payments is truly unavailable.

*Department of Health*, 823 F.2d at 328 n. 4 (citations omitted).

The third strand of the Ninth Circuit analysis rests on the view that the Secretary was impermissibly double-counting available income. The court noted:

[T]he SSI statute and its regulations, which the Secretary relies on at length, undermine rather than support the Secretary's position. A person who receives alimony or child support may in many cases also receive cash assistance under SSI or AFDC. When such a person applies for cash assistance, federal law requires that child support and alimony be

---

**5.** The defendants argue that the extent to which court-ordered child support payments may be excluded is limited by the Federal Financial Participation Statute. 42 U.S.C. § 1396b(f).

That statute is not relevant to the determination of whether or not court-ordered child support is available income to Medicaid recipients.

treated as the unearned income of the recipient of the support payment. Curiously, the Secretary asserts that the income should be treated as also available to the payor. Thus, the Secretary seeks to count the income twice. Clearly, the income is available to only one person, either the payor or the payee. Congress has determined that the income should be attributed to the payee. The Secretary has not advised us why we should ignore relevant federal law and we refuse to do so.

*Department of Health,* 823 F.2d at 328 (citations omitted).

Defendants claim that *Department of Health* is not analogous because the State of California was asking for a waiver of the income guidelines while in the instant case, Minnesota has not applied for a waiver. This argument is misplaced, however, because the factors used by the Ninth Circuit to interpret the Medicaid statute did not hinge on California's request for modification of the guidelines. The interpretation of "available" is based on the court's reading of the statute and prior court decisions.

Defendants also argue that *Department of Health* is incorrectly decided because it overextends the Ninth Circuit's previous decision in *Grunfeder v. Heckler,* 748 F.2d 503 (9th Cir.1984). In *Grunfeder,* the Ninth Circuit (en banc) held that reparation payments made to survivors of the Holocaust were not "available" in the calculation of Medicaid income guidelines. The court found that reparation payments were not income because they were in effect reimbursements. *Grunfeder,* 748 F.2d at 508. Defendant Sullivan argues that *Grunfeder* was based on a narrow view that reparations are not income and that *Department of Health* is distinguishable.

While it may be true that the holding in *Grunfeder* is distinguishable, this does not diminish the precedential value of *Department of Health.*[6] First, *Department of Health* cites *Grunfeder* only for the proposition that exclusions in income approved

by the Secretary are not exhaustive. *Department of Health,* 823 F.2d at 328. This language is probably dicta, but congruous with other Ninth Circuit decisions like *Whaley,* which found that the Secretary could not restrict states from using other income guidelines that were consistent with statutory mandates. *Whaley,* 823 F.2d at 328. Second, *Department of Health* finds precedential support in *Whaley* as discussed above. Third, the holding in *Department of Health* is independently based on the review of the statutory language in the Medicaid act. *Department of Health,* 823 F.2d at 328.

Defendants also disagree with the *Department of Health* analysis that attributing income to both the payor and payee is inappropriate under the Medicaid statute. Defendants argue that in everyday economic transactions, money flows from person to person and is income to all parties in the economic chain.

This definitional argument is correct, however, only if the focus is on "what is income." The focus in the instant case, however, is on the definition of "actually available" income. When plaintiff Emerson receives his social security disability income he distributes the required amount for the benefit of his daughter pursuant to the court order. The funds are income to both father and daughter, but they are "actually available" only to the daughter-payee. Likewise, in *Whaley,* government benefits were income of the veteran, but the funds were "actually available" income to the children of the veteran. *Whaley,* 663 F.2d at 874.

*Cervantez v. Sullivan,* 719 F.Supp. 899 (E.D.Cal.1989), also supports the proposition that the term "available income" is defined as funds which are available to meet the basic needs of the recipient. In *Cervantez,* the court held that funds garnished by court order for child support are not available to the recipient for the purposes of income calculation. *Cervantez,* 719 F.Supp. at 912. The *Cervantez* case

---

**6.** *Grunfeder* also concerned eligibility for SSI income as opposed to the instant case which

focuses on Medicaid guidelines. *Grunfeder,* 748 F.2d at 505.

dealt with regulations under the SSI program. The court concluded:

> If funds that are merely earmarked for child support, but which are in fact in the possession of a federal benefits applicant or recipient cannot be considered "available income" within the meaning of the statute, it must follow that funds garnished to satisfy a child support judgment cannot be considered available income.

*Cervantez,* 719 F.Supp. at 912 (citations omitted).

Defendants attack *Cervantez* on basically the same grounds as *Department of Health.* These criticisms do not answer the *Cervantez* court's close reading of the statutory meaning of available income. The Court finds that *Department of Health* and *Cervantez* provide compelling precedents in support of plaintiff's claims.

The defendants cite a variety of cases which they claim give deference to the Secretary in determining income standards. Defendants cite *Schweiker v. Gray Panthers,* 453 U.S. 34, 101 S.Ct. 2633, 69 L.Ed.2d 460 (1980), where the Supreme Court concluded that the term "available" could include the income of a spouse. This case is clearly distinguishable from the instant action because Congress provided clear statutory authority to the Secretary to look to the income of a benefit recipient's spouse. 42 U.S.C. § 1396a(a)(17)(D).

The Secretary also cites *Heckler v. Turner,* 470 U.S. 184, 105 S.Ct. 1138, 84 L.Ed.2d 138 (1985) and *Deel v. Jackson,* 862 F.2d 1079 (4th Cir.1988), *cert. denied,* 490 U.S. 1092, 109 S.Ct. 2434, 104 L.Ed.2d 991 (1989). As discussed above in the statutory analysis, these cases deal with the AFDC program which has an administrative availability requirement. The language of the Medicaid statute and its legislative history are not discussed.

C. Constitutional Argument

■ Plaintiff argues that the policy of including court-ordered child support payments in the definition of income violates the constitutional rights of the class. The Court need not decide this constitutional issue to resolve this case. The Court will not rule on the constitutionality of an act of Congress if a construction of the statute is fairly possible by which the question may be avoided. *United States v. Clark,* 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980). Accordingly, the Court declines to consider plaintiff's constitutional challenge.

D. Adjustment of Child Support

Defendant Wynia argues that any hardship that plaintiff alleges can be reduced by a modification in the child-support order. This argument is not relevant to the inquiry before the Court. The Court is required to determine if the defendants are appropriately evaluating the income assessment guidelines in the Medicaid statute. The ability of some members of the plaintiff class to gain reductions in their court-ordered child support is not relevant to analyzing the Medicaid statute. Accordingly, the Court declines to further consider this argument.

CONCLUSION

Based on the foregoing, and upon all the files, records and proceedings herein,

IT IS ORDERED that:

1. defendant Sullivan's motion for summary judgment is denied;

2. defendant Wynia's motion for summary judgment is denied;

3. plaintiff's motion for summary judgment is granted;

4. defendant Wynia is hereby ordered to discontinue the Department of Human Services policy of including court-ordered child support payments in the calculation of countable income under the Minnesota Medical Assistance program.

5. defendant Sullivan is hereby enjoined from requiring defendant Wynia to include court-ordered child support payments in the calculation of countable income in the Minnesota Medical Assistance program.