**FIRST SOUTH PRODUCTION CREDIT ASSOC., et al., Plaintiffs,**

v.

**FARM CREDIT ADMINISTRATION, et al., Defendants,**

**and**

**Farm Credit Bank of Texas, Defendant/Intervenor.**

**Civ. A. No. 89–0935–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 2, 1990.

Nels J. Ackerson, Stewart A. Block, George W. Jones, Jr. and Michael D. Warden, Sidley & Austin, Washington, D.C., for plaintiff Farm Credit Bank of Wichita.

C. York Craig, Jr., L. Keith Parsons and Michael T. Dawkins, Watkins Ludlam & Stennis, Jackson, Miss., for plaintiff First South Production Credit Assoc.

Sam E. Scott, Heidelberg, Woodliff & Franks, Jackson, Miss., for plaintiff Federal Intermediate Credit Bank of Jackson.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Theodore Hirt and Kathryn Ray, Dept. of Justice, Washington, D.C., Henry E. Hudson, U.S. Atty., E.D. Virginia, Alexandria, Va., and Victor Cohen and Anthony Torres, Farm Credit Admin., McLean, Va., for defendants Farm Credit Admin., et al.

Ky P. Ewing, Jr. and Christopher T. Corson, Vinson & Elkins, Washington, D.C., Thomas F. Farrell, II, McGuire, Woods, Battle & Boothe, Alexandria, Va., and Bill Zimmerman, Gen. Counsel, Farm Credit Bank of Texas, Austin, Tex., for defendant/intervenor Farm Credit Bank of Texas.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the court on the parties' cross-motions for summary judgment.[1] Plaintiffs, First South Production Credit Association ("First South PCA"), Federal Intermediate Credit Bank of Jackson ("Jackson FICB"), and Farm Credit Bank of Wichita ("Wichita FCB"), bring this action for declaratory and injunctive relief challenging the Farm Credit Administration's ("Administration's") determination that section 410 of the Agricultural Credit Act of 1987 (the "1987 Act"), Pub.L. No. 100–233, 101 Stat. 1568, 1637 (1988), 12 U.S.C.A. § 2011 note, requires the Jackson FICB to merge with defendant/intervenor Farm Credit Bank of Texas ("Texas FCB").

### FINDINGS OF FACT

Pursuant to the stipulations filed by the parties, the court makes the following findings of fact.

1. First South PCA, Jackson FICB, Wichita FCB, and Texas FCB are each federally chartered institutions of the Farm Credit System (the "System"). The System is a nationwide network of agricultural lenders.

2. The Jackson FICB finances short- and intermediate-term lending in the Fifth Farm Credit District (the "Jackson District"), which is comprised of the states of Alabama, Louisiana, and Mississippi. The Jackson FICB finances the lending activities of two production credit associations ("PCAs") in the Jackson District, First South PCA and Northwest Louisiana PCA. First South PCA borrows from the Jackson FICB and makes short- and intermediate-term loans to farmers, ranchers, and other qualified borrowers in the Jackson District, except for a portion of Louisiana. First South PCA owns, and owned at all time relevant to this lawsuit, approximately 92% of the stock of the Jackson FICB. The portion of Louisiana not served by First South PCA is served by Northwest Louisiana PCA, which owns approximately 8% of the stock of the Jackson FICB.

3. The Wichita FCB makes and finances short-, intermediate-, and long-term loans in the Ninth Farm Credit District, which is comprised of the states of Kansas, Oklahoma, Colorado, and New Mexico.

4. The Administration is an independent executive branch agency of the federal

---

1. The parties have agreed there are no material facts in dispute and have stipulated to all facts.

government that regulates and examines System institutions for safety and soundness and for compliance with law and regulations. 12 U.S.C.A. §§ 2241–45, 2252, 2254 (West Supp.1989). The Administration is managed by a board which consists of three members appointed by the President, by and with the consent of the Senate. *Id.* § 2242(a). The board may transact business when there is a vacancy provided a quorum, which is defined as two members, is present. *Id.* § 2242(c). One member is designated by the President to serve as the chairman of the board and the chief executive officer of the Administration. *Id.* § 2242(a). From the close of business on November, 4, 1988, until the submission of this case, Marvin Duncan served as Acting Chairman of the Administration Board.

5. The Texas FCB finances short-, intermediate-, and long-term lending in the Tenth Farm Credit District, which is comprised of the state of Texas. Since the amendment of its charter, effective February 10, 1989, the Texas FCB has made long-term loans in the Jackson District.

6. Congress created the Farm Credit System (the "System") in 1916 in order to establish a nationwide network of lenders which would provide credit to the agricultural sector. The System's purpose is to "improv[e] the income and well-being of American farmers and ranchers by furnishing sound, adequate, and constructive credit and closely related services to them, their cooperatives, and to selected farm-related businesses necessary for efficient farm operations." 12 U.S.C.A. § 2001(a) (West 1980).

7. The System was organized with twelve geographic territories known as farm credit districts. *Id.* § 2002(b) (West Supp.1989). Twelve Federal Land Banks ("FLBs") were created; one FLB was created for each of twelve districts. Farmers in each district could establish Federal Land Bank Associations ("FLBAs") to operate in specified geographic territories, which may include an entire district or a portion thereof.

8. The Agricultural Credit Act of 1923 established Federal Intermediate Credit Banks ("FICBs") in each district in order to provide short- and intermediate-term agricultural loans. The Farm Credit Act of 1933 established Production Credit Associations ("PCAs") which also provide such credit to farmers and ranchers and Bank for Cooperatives ("BCs") which would make loans to marketing, purchasing and business service cooperatives.

9. Thus, from 1933 to 1988, each district was served by three System banks: 1) a FLB, which made long-term real estate loans through Federal Land Bank Associations ("FLBAs"); 2) a FICB, which financed the short- and intermediate-term lending of PCAs; and 3) a Bank for Cooperatives ("BCs"), which made loans to agricultural, aquatic, and rural utility cooperatives. Until 1988, the FLB and FICB in each district shared the same board of directors, and a single district board served as the board of each of the three banks within a district. Prior to the enactment of the 1987 Act, no significant changes had been made to the System's structure. *See* Agricultural Credit Act of 1987, Pub.L. No. 100–233, 1987 U.S.Code Cong. & Admin. News 2723, 2735.

10. The depression in the nation's agricultural economy during the 1980's and the corresponding losses experienced by the System brought many System banks to the brink of bankruptcy. In developing legislation designed to remedy these problems, Congress recognized that the System's seventy year-old structure must be reorganized. Agricultural Credit Act of 1987, Pub.L. No. 100–233, 1987 U.S.Code Cong. & Admin.News at 2736. As part of the legislation ultimately enacted, Congress required, therefore, the merger of the separate short- and long-term lending institutions in each district within six months after date of enactment (i.e. by July 6, 1988).

11. Pursuant to section 410 of the 1987 Act, 12 U.S.C.A. § 2011 note (West Supp. 1989), the FLB and the FICB in each district merged to form a Farm Credit Bank. The sole exception to the necessary merg-

ers were the institutions in the Jackson District. Effective July 6, 1988, Congress also replaced the pre-existing Titles I and II of the 1971 Act applicable to FLBs and FICBs with a new Title I applicable to FCBs. The initial board of each FCB was composed of members of the district board (which was dissolved upon the creation of the FCB) elected by the PCAs, FLBAs, and the stockholders at large. Each bank in the System is now governed by its own board.

12. In addition, under the 1987 Act, the BCs were reorganized into three BCs with national charters, and Agricultural Credit Associations ("ACAs") have been established in some districts through the merger of FLBAs and PCAs. Each is supervised by one FCB.

13. The System derives funds for lending primarily from the sale of securities in the national markets to the investing public. These System securities are the joint and several obligation of all the System's banks. 12 U.S.C.A. § 2155(a). The banks provide funds obtained through the sale of these securities to the associations in their districts. *Id.* § 2015. These associations then lend funds to qualified borrowers. *Id.* §§ 2075(a), 2093(9). Today, the System has over $50 billion in outstanding loans to farmers, ranchers and agricultural cooperatives. *See* Agricultural Credit Act of 1987, Pub.L. No. 100–233, 1987 U.S.Code Cong. & Admin. News at 2726.

14. These System institutions function as a cooperative financial entity. All System institutions are owned cooperatively by System borrowers; borrowers must purchase stock in their PCAs or FLBAs in order to obtain a loan, and these associations, in turn capitalize the district banks. 12 U.S.C.A. §§ 2154a(c)(1)(E), 2013 (West Supp.1989). Stockholders elect a board of directors responsible for the governance of each association. The associations, as stockholders of the banks in each district, elect the directors who sit on their bank boards.

15. During the years immediately preceding July 6, 1988, the FLBs, FICBs, and BCs in all of the Farm Credit Districts operated under common management except for the Texas District. Before the Administration placed the Jackson FLB in receivership, the Jackson FICB and Jackson FLB shared the same board of directors and had common management.

16. Collectively, the FLBAs and PCAs operating in each district serve the same potential borrowers, namely, farmers, ranchers, and other qualified borrowers in the district they serve. The actual overlap between FLBA and PCA borrower groups may vary from district to district and is as low as 10% in the Texas District.

17. Prior to May 20, 1988, the Jackson FLB and the Jackson FLBA provided long-term lending services to the Jackson District.

18. On January 6, 1988, when the 1987 Act became effective, the Jackson FLB was insolvent. On May 17, 1988, the Farm Credit System Assistance Board, which was created by the 1987 Act and authorized to certify System institutions for financial assistance, requested the Administration to appoint a receiver for the Jackson FLB.

19. On May 20, 1988, the Administration appointed a receiver to liquidate the Jackson FLB and the Jackson FLBA. The bank remains presently in receivership. The appointment of a receiver for the Jackson FLB was the first and only receivership of a System bank, although receivers have been appointed for System associations.

20. As a result of the receivership, the merger of the banks in the Jackson District required as of July 6, 1988, by section 410 has not occurred. The Administration has stated:

> The 1987 Act required that each such merger should occur pursuant to a merger plan agreed to by the boards of directors of such banks and approved by the FCA. If any banks failed to agree to a merger plan, the merger would occur pursuant to a merger plan prescribed by the FCA. No section 410 merger occurred in the Jackson District, because, on May 20, 1988, the FLB of Jackson was placed in receivership.

Since July 6, 1988, the Jackson FICB has continued to finance the short- and intermediate-term lending activities of First South and Northwest Louisiana PCA and remains the only federal intermediate credit bank in the Farm Credit System.

21. In addition, the Jackson District was left without a provider of long-term lending services. To remedy this situation, Jackson FLB's receiver entered into temporary service agreements with the Texas FCB and the Farm Credit Bank of Columbia ("Columbia FCB") which remained effective until February 10, 1989.

22. On July 21, 1988, the Jackson FICB informed the Administration that merger discussions were "continuing" with both the Columbia FCB and the Texas FCB, and that the Jackson FICB "plan[ned] to seek discussion with other neighboring districts."

23. During the summer, 1988, the Jackson FICB began exploratory discussions concerning a voluntary merger with the Columbia FCB, the Louisville FCB, the St. Louis FCB, and the Texas FCB.

24. On October 27, 1988, the Jackson FICB, First South PCA, Northwest Louisiana PCA and the Texas FCB entered into a "Memorandum of Understanding" regarding a potential voluntary merger between the Jackson FICB and the Texas FCB, subject to shareholder consent and FCA approval. Negotiations concerning the proposed merger continued during the fall and winter and after the Texas charter was amended to extend into the Jackson District effective February 10, 1989, but the parties failed to reach a final mutually acceptable resolution of their differences.

25. As part of the liquidation of the Jackson FLB, the receiver proceeded to develop packages of loans of that bank to be offered for purchase through competitive bidding. Pursuant to Administration order, bidding was to be restricted first to System institutions, and if a satisfactory bid was not made, bidding would be opened to non-System institutions.

26. On October 31, 1988, the receiver offered a package of approximately 18,000 loans of the Jackson FLB with a face amount of $1.4 billion (approximately 80% of the Jackson FLB loan assets) for sale to System institutions. Pursuant to instructions from the Administration board, the bidder, at its option, could condition its bid on the receipt of "Territorial Servicing Rights" (defined in the bid package as "the permanent right to service the territory of either Alabama, Mississippi or Louisiana granted by the Administration on a statewide basis through extension or modification of the purchaser's System charter") for long-term lending in any or all of the three states in the Jackson District.

27. On December 7, 1988, the Columbia FCB, the Texas FCB, and a "Obligors Committee" (comprising nineteen System banks) submitted bids for the Jackson FLB loans. The Texas FCB was the only bidder which conditioned its bid for the Jackson loans on Administration approval of a charter amendment granting Territorial Servicing Rights in all three states of the Jackson District.

28. On December 21, 1988, the Administration board voted unanimously to accept the Texas FCB's bid. At that time, the board was composed of two members, James Billington and Acting Chairman Marvin Duncan. By separate motion and vote, the board also agreed unanimously to approve an amendment to the charter of the Texas FCB to "incorporate the permanent long term loan servicing rights for the states of Alabama, Mississippi, and Louisiana." That amendment was to take effect upon the closing of the bid, and was contingent upon the Administration's receipt of resolutions from the Texas FCB and the Jackson FLB receiver requesting the Administration to make such a boundary modification. On December 21 and 23, 1988, the receiver and the Texas FCB submitted their respective resolutions to the Administration.

29. The Administration did not seek or receive the consent of the Jackson FICB Board or the Jackson FICB stockholders for the amendment to the Texas FCB charter. The Administration did not inform the Jackson FICB, either before or at the time the charter amendment was granted, that

the amendment had or would have an impact on the future status of the Jackson FICB. No System institution asked the Administration for a determination of whether the granting of a charter for servicing long-term loans in the Jackson District would have an impact on the future status of the Jackson FICB or the servicing of short-term loans in the Jackson District. None of the plaintiffs challenged the validity of the amendment to Texas FCB's charter until this suit was instituted on June 23, 1989.

30. On January 6, 1989, Member Billington and Acting Chairman Duncan signed an order entitled "Delegation of Authority" which provided that the Board delegated to the Acting Chairman "any and all authorities of the FCA granted to the Agency or the [FCA] Board by statute, regulation, or otherwise except those authorities that are nondelegable."

31. Effective at the close of business, January 6, 1989, Billington resigned from the Administration Board. From January 6, through the submission of this case, Acting Chairman Duncan served as the only member of the Administration Board.

32. On February 7, 1989, the Administration notified the Texas FCB that its charter was amended to authorize "the Bank [to] make or participate in long-term real estate mortgage loans ... in the States of Alabama, Louisiana, and Mississippi" effective February 10, 1989.

33. On February 10, the closing on the sale occurred, and the Texas FCB acquired $1.4 billion face value of loans for the consideration of debt assumption of $846 million plus $94 million cash, thereafter reduced to $12 million cash, generated from the issuance of a new System debt obligation. The Texas FCB expended additional resources in establishing long-term lending capability in the Jackson District and soliciting customers for long-term loans.

34. On February 27, 1989, First South PCA wrote to Texas FCB concerning the on-going merger discussions and reiterated First South PCA's intention to seek a charter amendment for long-term lending authority. First South PCA submitted proposed articles to the Texas FCB for and FLBA covering First South's territory in order to seek a merger between the new FLBA and First South or to enter into a long-term agreement with the Texas FCB. Failing agreement to any of the alternatives set forth, First South sought the Texas FCB's approval to commence discussions with other FCBs. If all of First South PCA's requests were objectionable and if the Texas FCB was unwilling to permit it to commence discussions with other FCBs, First South indicated its letter should be considered notice of termination of the Memorandum of Understanding. On March 9, 1989, the Texas FCB agreed to terminate the Memorandum of Understanding with the Jackson entities.

35. In April 1989, the Wichita FCB, the Jackson FICB, and First South PCA initiated discussions with regards to a potential merger or affiliation. On April 5, 1989, the presidents of Wichita FCB and Jackson FICB advised the acting chairman of the Administration (Duncan) that negotiations involving a "mutually beneficial business relationship between the Wichita bank and all or a portion of the Jackson entities" had commenced, and sought Administration permission for the exchange of information regarding the Administration examinations and regulatory enforcement proceedings. Under Administration regulations, information regarding Administration examinations and regulatory enforcement proceedings is confidential and can only be disclosed with the Administration's approval. In December, 1988, the Administration had approved an exchange of confidential information between the Texas FCB and the Jackson FICB in connection with negotiations between those two banks.

36. By letter dated April 13, 1989, Acting Chairman Duncan notified the Jackson FICB and the Texas FCB that the Administration had "concluded that, in accordance with section 410 of the 1987 Act, the FICB of Jackson and the Texas FCB are required to merge not later than 6 months after February 10, 1989," the effective date of the Texas FCB charter amendment. That

finding fixed the merger date as August 10, 1989.

37. On April 19, 1989, the Texas FCB stated its agreement with the Administration's conclusion and confirmed it intention to pursue merger negotiation with the Jackson FICB.

38. On April 21, 1989, the Administration denied Wichita FCB and Jackson FICB's request to exchange information based on the Administration's interpretation of section 410.

39. On April 24, the Jackson FICB responded to Acting Chairman Duncan's April 13 letter by stating the "bank's intent to diligently pursue a timely merger" and requested an extension of the August 10 merger deadline.

40. On May 15, 1989, the Administration denied the request for extension of time, ordered that the Jackson FICB and the Texas FCB submit a merger plan by June 29, 1989, and provided the Jackson FICB with relevant merger procedures.

41. By joint letter dated June 7, 1989, the Jackson FICB, First South PCA and the Wichita FCB sought reconsideration of 1) the Administration's determination that section 410 requires Jackson FICB to merge with the Texas FCB, 2) the Administration's denial of the joint request of the Wichita FCB and the Jackson FICB to share confidential information, and 3) the Administration's requirement that Jackson FICB submit a merger plan by June 29. On the same date, officials from all parties involved met to discuss these issues.

42. On June 15, 1989, Acting Chairman Duncan denied the request for reconsideration and reaffirmed each of the prior agency determinations.

43. On June 23, 1989, the present litigation ensued.

44. The Texas FCB intervened as a defendant in this action with the consent of the parties.

## CONCLUSIONS OF LAW

■ Prior to considering the merits of the case, the court must resolve the contention of Texas FCB that the three plaintiffs lack standing to bring this suit. Plaintiffs must demonstrate the constitutional requirement of injury in fact, that they have suffered injury fairly traceable to the defendant's allegedly unlawful conduct, and must show that a decision in their favor would redress that injury. *Branch Bank & Trust Co. v. National Credit Union Admin. Bd.*, 786 F.2d 621, 624 (4th Cir. 1986), *cert. denied*, 479 U.S. 1063, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987); *Leaf Tobacco Exporters Ass'n, Inc. v. Block*, 749 F.2d 1106, 1112 (4th Cir.1984). *See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

■ Wichita FCB complains that the Administration has denied it access to confidential information. Specifically, in a letter dated April 5, 1989, Wichita requested from the Administration information about FCA examinations of the Jackson FICB, First South PCA, Northwest Louisiana PCA, and the Wichita FCB. Wichita FCB also requested information about FCA regulatory enforcement proceedings or conditions of merger, either in existence or contemplated by the agency and known to the parties. Wichita FCB contends that this denial has prevented it from pursuing a potentially beneficial business relationship. As to the other plaintiffs, the Administration's interpretation of section 410 will deny First South PCA the exercise of its voting rights in a merger. First South, which owns 92% of Jackson FICB's stock, would be required to accept stock in the Texas FCB for its stock in the Jackson FICB, and it will force First South to establish business relationships with a new bank. Finally, Jackson FICB will be forced to merge into and form a new bank.

■ First South and Jackson FICB have shown that they suffered some actual or threatened injury since both are required to accept stock in a new institution which presents financial consequences, and both are required to alter a business organization. The injuries are the result of the Administration's actions and would be alleviated by a decision in plaintiffs' favor. Wichita FCB, however, has failed to show

any injury. It has shown a failure to receive confidential information, but has demonstrated no right to such information and has made no showing that receipt of the information would have affected them in any way.[2]

In addition to showing injury, the plaintiffs must satisfy the prudential component of the standing doctrine. *See Branch Bank & Trust,* 786 F.2d at 624; *Leaf Tobacco,* 749 F.2d at 1111–1112. The interests sought to be protected must be arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question. *Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). The plaintiffs rely solely on the fact that they are regulated entities and the Administration, as the regulator, has directly infringed on their rights under the regulatory scheme. While Wichita FCB is a regulated entity under the general farm credit laws, its interest is remote to the issue before this court. Wichita FCB is not compelled to avoid or to undertake any activity under the Administration's interpretation of section 410. Section 410 requires the mandatory merger of the intermediate and long term lenders within the Jackson District. Wichita FCB is not a part of the Jackson District and has no right given by the 1987 Act to be involved in the merger of banks within that district. The mere desire of the Wichita FCB to be involved in a separate, voluntary merger with the Jackson FICB which may or may not ever be condoned by the Administration does not give the bank standing within the meaning of the zone of interests test. First South PCA and Jackson FICB are also regulated by the statute in question. However, unlike the Wichita FCB, both are being compelled to undertake activity under the mandatory merger provision of section 410.

■ Texas FCB argues that Jackson FICB lacks standing, because its corporate powers supplied by 12 U.S.C. § 2072 have been repealed effective July 6, 1988. Texas contends that the bank ceased to exist as a legal entity and lacks statutory capacity to sue and be sued. However, the repeal of the title under which the Jackson FICB formerly operated does not necessarily affect the validity of its charter. *See* 7A Fletcher Cyclopedia Corporations § 3733 (the repeal of a general law authorizing the formation of corporations does not constitute a repeal of the charters of all corporations formed under that law). The Jackson FICB's charter was not revoked nor was the bank otherwise dissolved. The Jackson FICB has continued to finance the short- and intermediate-term lending activities of both First South PCA and Northwest Louisiana PCA since July 6, 1988.

First South PCA and Jackson FICB have satisfied both constitutional and prudential limitations of the standing doctrine and are, therefore, entitled to invoke this court's jurisdiction. Wichita FCB, however, has relied solely on the Administration's denial of an exchange of confidential information to which it is not entitled, and the fact that it is a regulated entity under the farm credit laws in an effort to demonstrate standing. Accordingly, Wichita has not satisfied the required showing of injury in fact and has not satisfied the prudential standing requirements. Wichita FCB is not entitled to maintain this action.

As to the merits of this action, the plaintiffs claim the Administration's actions are invalid in that the Administration's February 7, 1989, decision to alter the Texas FCB's charter to enable it to engage in long-term lending within the Jackson District was done without a quorum, and without the concurrence of the Jackson FICB's board of directors and stockholders.

■ The Administration's board may transact business if a vacancy exists, provided a quorum is present, and a quorum consists of two members. 12 U.S.C.A. § 2242(c) (West Supp.1989). On December 21, 1988, the board's two members voted to approve an amendment to the Texas FCB's charter in order to "incorporate the permanent long term loan servicing rights for the states of Alabama, Mississippi, and Louisi-

---

**2.** Wichita merely asserts that it may have benefited from receiving the information.

ana." That amendment was to take effect upon the closing of the bid, and was contingent upon the Administration's resolutions from the Texas FCB and the receiver for the Jackson FLB requesting the Administration to make such a boundary modification. On December 21 and 23, 1988, the receiver and the Texas FCB submitted their respective resolutions to the Administration. A quorum of the Administration board was present when the amendment to the Texas FCB's charter was approved.

On January 6, 1989, the two members of the Administration board signed an order entitled Delegation of Authority, which provided that the board delegate to the Acting Chairman "any and all authorities of the FCA granted to the Agency or the [FCA] Board by statute, regulation, or otherwise except those authorities that are nondelegable." On the same date, member Billington resigned from the Administration board. After January 6, 1989, Acting Chairman Duncan served as the sole member of the Administration Board. Since the board's deliberation on amending the Texas FCB's charter was complete on December 21, 1988, only the ministerial acts of signing and mailing the charter amendment were carried out with one member on the board. The ministerial act of signing and mailing by one member does not affect the validity of the amendment. Once a quorum has voted for an amendment and caused it to be issued, the order is not nullified because of incapacity intervening before the ministerial act of service. *See Braniff Airways, Inc. v. Civil Aeronautics Bd.*, 379 F.2d 453, 459 (D.C.Cir.1967).

██ The plaintiffs further contend that in order for any boundary modification to occur in the Jackson District, the Administration was required by section 5.17(a)(1) of the Farm Credit Act to acquire the concur-

rence of the Jackson FICB board of directors and stockholders.

Under section 5.17(a)(1) of the Farm Credit Act, the Administration has the power to:

[m]odify the boundaries of farm credit districts, with due regard for the farm credit needs of the county, as approved by the Board, with the concurrence of the *district banks involved.*

12 U.S.C.A. § 2252(a)(1) (West Supp.1989) (emphasis added). Since the Farm Credit Act does not define the term "district banks involved," "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). In *Chevron*, the Supreme Court set forth the standard for judicial review of administrative interpretations of governing statutes:

If the intent of Congress is clear, that is the end

of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted).

In the absence of guidance in the language of the statute or the legislative history,[3] the Administration concluded that

---

**3.** Before being amended by the 1987 Act, section 5.17(a) required that a boundary modification have the concurrence of the "district *boards* involved." 12 U.S.C.A. § 2252(a)(1) (amended 1988) (emphasis added). The boards to which section 5.17(a) referred were the Farm Credit District Boards of Directors which, under the prior law, served in each district as a board of directors for all of the System banks in that

district. Each district board was composed of two members elected by the FLBAs, two members elected by the PCAs, two members elected by the borrower from or subscribers to the guaranty fund of the FCBs and one member elected by the borrowers at large in the district. *Id.* §§ 2222(a), 2223(a)(1), (2)(A). Thus, under the prior law, the "district boards involved" referred to all of the System banks. The 1987 Act

the banks involved in the boundary modification were those banks directly concerned in long-term lending in the Jackson territory. The Jackson FLB had been the long-term lender in the Jackson District. *See* 12 U.S.C.A. §§ 2011, 2014, 2020 (repealed 1988); 12 U.S.C.A. § 2031 (amended and renumbered 1988). The Texas FCB had been granted authority to conduct long-term lending in the Jackson District on December 21, 1989, when the Administration accepted the Texas FCB's bid for the Jackson FLB loan package and voted unanimously to amend its charter. The amendment was contingent upon the receipt of resolutions from the Texas FCB and the Jackson FLB receiver concurring in the grant of the charter amendment.[4] That aspect of the Administration's decision embodied a determination that the district banks involved in the charter amendment for purposes of section 5.17(a)(1) were the bank losing the long-term lending rights and the bank gaining them. The Administration based its decision to confer only with the Texas FCB and Jackson FLB on the fact that those banks were the only institutions authorized to engage in long-term lending. Since the Jackson FICB is not engaged in or authorized to engage in long-term lending, the Administration concluded that it is not a bank directly concerned in the boundary modification, and the Administration did not seek the consent of the Jackson FICB board or stockholders for the charter amendment. The Administration had permitted bidders for the Jackson FLB in receivership loans to condition their bids on the right to provide long-term lending service in the states in the Jackson District. The Texas FCB was the only bidder which desired to exercise such a right in the entire Jackson territory. When the bid was accepted, it was necessary for Jackson FLB's receiver to transfer the bank's exclusive right to provide long-term agricultural credit in the Jackson District to Texas FCB.

Since neither the statute or legislative history of section 5.17(a)(1) has addressed directly which banks are involved, the Administration reasonably determined that the Jackson FICB is not a bank directly concerned in the boundary modification. Such an interpretation is permissible and will be upheld. Where a private party and agency disagree on interpretation of statute, deference is owed the agency charged with administering the statute if the agency's interpretation is based on a permissible construction of the statute. *Wilson v. Lyng,* 856 F.2d 630, 634 (4th Cir.1988); *Department of Defense Dependents Schools v. Federal Labor Relations Authority,* 852 F.2d 779, 782 (4th Cir.1988).

■ Plaintiffs argue next that section 410 does not require the Jackson FICB and the Texas FCB to merge, and the required merger between those banks is without statutory authority, because the action was taken without the concurrence of the Jackson FICB board of directors and its stockholders.

Section 410(a) of the 1987 Act provides:

Not later than 6 months after the date of the enactment of this section [January 6, 1988], the Federal land bank and the Federal intermediate credit bank of each Farm Credit System district shall merge into a Farm Credit Bank in such district pursuant to a plan of merger agreed on by the Boards of Directors of such banks

---

abolished the district boards effective immediately, but did not correct the reference to the boards in section 5.17.

The Agricultural Credit Technical Correction Act of 1988 ("1988 Act"), enacted on August 17, 1988, substituted the term "district banks" for the term "district boards," effective six months from the date of enactment of the 1987 Act. Pub.L. No. 100–399, §§ 901(m)(1), 1001(b), 102 Stat. 989, 1008, 1009 (1988) (codified at 12 U.S. C.A. § 2252(a)(1) (West Supp.1989). This six-month time period coincides with the expected date by which Congress envisioned the completion of the mergers between the FLBs and

FICBs in each district. The FCB's boards of directors could then perform the functions previously done by the district boards. However, Congress did not address the issue of which banks should be consulted for a proposed boundary modification affecting a district that does not have an FCB. Additionally, Congress did not express an intent regarding how the term "district banks involved" should be interpreted.

**4.** The Administration received those resolutions on December 21 and 23, 1988.

and approved by the Farm Credit Administration, or if such banks fail to agree, a plan of merger prescribed by the Farm Credit Administration.

12 U.S.C.A. § 2011 note (West Supp.1989). Section 410 is a mandatory merger provision. Such a merger has taken place in each Farm Credit District with the exception of the Jackson District. While the statute's language dictates specifically the merger of the two banks within the same district, Congress did not provide explicit guidance as to how to carry out a merger when an FLB has been placed in receivership.

Since neither the language of section 410 or its legislative history specifically addresses the problem in the Jackson District, the court must determine whether the agency's action is based on a permissible construction of the statute under the *Chevron* standard. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). *See also Clarke v. Securities Industry Assoc.*, 479 U.S. 388, 403–04, 107 S.Ct. 750, 759–60, 93 L.Ed.2d 757 (1987). In making this determination, however, the court must also consider as significant an agency's interpretation of the statute it is charged with administering. *Batterton v. Francis*, 432 U.S. 416, 424, 97 S.Ct. 2399, 2404, 53 L.Ed.2d 448 (1977). Several circuits have spoken as to the deference to be given to an agency interpretation. Since the it has knowledge of the inner workings of the farm credit system, the Administration is best situated to determine which method of resolving the problem at issue best comports with the language, legislative history and purposes of the farm credit laws. *Bailey v. Federal Intermediate Credit Bank of St. Louis*, 788 F.2d 498, 504 (8th Cir.1986). Furthermore, an agency's interpretation of a statute need not be embodied in a rule or regulation in order to be accorded deference. *FDIC v. Philadelphia Gear Corp.*, 476 U.S. 426, 439, 106 S.Ct. 1931, 1939, 90 L.Ed.2d 428 (1986); *Deel v. Jackson*, 862 F.2d 1079, 1087 (4th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 2434, 104 L.Ed.2d 991 (1989).

The Administration's determination does not conflict with the language of the statute. Section 410 directs the mandatory merger of the FLBs and FICBs in each district. Nothing prevents the Administration from treating the Texas FCB as a federal land bank within the meaning of the statute. Effective February 10, 1989, the Texas FCB's charter was validly amended in order to authorize it to engage in long-term lending in the Jackson District. Since it is exercising the long-term lending powers of the now defunct Jackson FLB, Texas FCB has been operating in the Jackson District. The Administration's letter of April 13, 1989, directing the Texas FCB and Jackson FICB to merge comports with the mandatory merger provision of section 410.

Plaintiffs contend that the Texas FCB cannot be treated as a federal land bank within the Jackson District, because it does not share the same management, board of directors and shareholders with the Jackson FICB. However, the distinctive attribute of a federal land bank was its authority to make long-term loans. 12 U.S.C.A. § 2014 (repealed 1988). A federal land bank's relationship to the federal intermediate credit bank within the same district does not determine its status. The commonality of management does not make an institution a long-term lender. The Texas FCB is a long-term lender in the Jackson District.

The Administration's determination also effectuates the purpose of section 410. Congress envisioned that by unifying long- and short-term lending authority in one bank, the costs of supplying credit to farmers would be reduced. If the merger between the Texas FCB and Jackson FICB takes place, this cost reduction can be realized.

Even if this court were to visualize other reasonable solutions to the problem in the Jackson District, the Administration's decision is nonetheless entitled to deference. *Chemical Mfr. Ass'n v. Natural Resources Defense Council, Inc.*, 470 U.S. 116, 134, 105 S.Ct. 1102, 1112, 84 L.Ed.2d 90 (1985).

*See also Theodus v. McLaughlin,* 852 F.2d 1380, 1386 (D.C.Cir.1988) (agency is in the best position to choose between several reasonable interpretations). As the agency charged with overseeing a complex statutory program, the Administration is best situated to evaluate which alternative is most consistent with the 1987 Act and other System laws. *See Deel,* 862 F.2d at 1087; *Bailey,* 788 F.2d at 504.

Finally, plaintiffs sought permission to share information about Administration examinations of the Wichita FCB, Jackson FICB, First South PCA and Northwest Louisiana PCA and Administration regulatory enforcement proceedings or conditions of merger. Plaintiffs argue that because the FCA relied upon its erroneous determination that Section 410 requires the merger of the Jackson FICB and the Texas FCB as the basis for the denial of the exchange of confidential information among plaintiffs, that action is arbitrary and capricious and not in accordance with law.

Since the Administration's finding that the Jackson FICB and the Texas FCB must merge is permissible, plaintiff's argument is without merit. Reports of Administration examinations of System institutions are confidential and may be disclosed only with the consent of the Administration chairman. 12 C.F.R. § 602.205 (1989). *See also* 12 C.F.R. § 602.250(a)(8) (1989) (Administration records "of or related to examination, operation, reports of condition and performance, or reports of or related to Farm Credit institutions that are regulated and examined by the Farm Credit Administration that are prepared by, on behalf of, or for its use" are exempt from disclosure). Records relating to formal hearings before the Administration are confidential unless the board otherwise orders. 12 C.F.R. § 622.20 (1989). Accordingly, there is no showing that the Administration's refusal to share information is arbitrary and capricious.

For the foregoing reasons, the defendants' motions for summary judgment should be GRANTED and plaintiff's motion for summary judgment DENIED. The Administration's approval of the Texas FCB's charter amendment was approved by a quorum of the Administration board and with the concurrence of the district banks involved in long-term lending in the Jackson District. The Administration's conclusion that section 410 of the 1987 Act requires the merger of Texas FCB and the Jackson FICB is permissible. The Administration's refusal to permit an exchange of confidential information is not arbitrary, capricious and an abuse of discretion. Finally, this court's order of June 27, 1989, staying the Administration's determination pending a final judgment on the merits should be lifted.

An appropriate ORDER shall issue.