**CALIFORNIA LIVESTOCK PRODUCTION CREDIT ASSOCIATION,
Plaintiff,**

**v.**

**FARM CREDIT
ADMINISTRATION, Defendant.**

**Civ. A. No. 90–0750–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 25, 1990.

Nels J. Ackerson, George W. Jones, Jr., Michael D. Warden, Sidley & Austin, Washington, D.C., for plaintiff.

Henry E. Hudson, U.S. Atty., Robert C. Erickson, Asst. U.S. Atty., Alexandria, Va., Anne E. Dewey, Gary Van Meter, Farm Credit Admin., McLean, Va., Stuart Gerson, Brook Hedge, Theodore Hirt, Renee M. Wohlenhaus, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter is before the court on plaintiff's motion for summary judgment and defendant's motion for partial summary judgment. Defendant's motion to dismiss is also before the court. The parties have agreed there are no material facts in dispute as to the question of the right of withdrawal. The Farm Credit Administration ("FCA") does contend that further hearings must be held by the FCA to determine the exit fee if withdrawal is permitted. The court finds no material facts in dispute and this case can be decided on summary judgment motions.

Plaintiff California Livestock Production Credit Association ("California Livestock") is an instrumentality chartered and regulated by defendant FCA. In early 1988, FCA examiners concluded that California Livestock was no longer viable and directed California Livestock management to develop a business plan to return the institution to financial viability.

In November of 1988, California Livestock advised the FCA that termination of Farm Credit System ("System") status was necessary for its long term survival. California Livestock informed the FCA of its intent to terminate System status and reorganize as Stockman's Bank of Commerce, regulated by the California State Banking Department and the Federal Deposit Insurance Corporation ("FDIC").

Under 7.10 of the Farm Credit Act of 1971, as amended (the "Farm Credit Act") 12 U.S.C. 2279d, a Farm Credit System institution has a statutory right to terminate its status as a System entity upon compliance with specified conditions. On December 23, 1988, California Livestock formally requested FCA approval to terminate its status as a System institution pursuant to 7.10. On that same date, California Livestock submitted the termination plan and stockholder disclosure materials to the FCA in accordance with 7.11(a)(1) of the Farm Credit Act, 12 U.S.C. 2279e(a)(1).

On February 3, 1989, following 30 days of no action by the FCA Board on California Livestock's proposal for termination of System status, California Livestock submitted the termination plan and disclosure materials to its stockholders in accordance with 7.11(a)(2) of the Farm Credit Act. On February 10, 1989, California Livestock received a letter from the FCA stating that because of the resignations of two of the three members of the FCA Board as of January 7, 1989, the Board lacked a quorum and would not act on the termination plan or disclosure materials. A quorum of the FCA Board was not reconvened until October 12, 1989. By the time California Livestock received the FCA letter dated January 7, 1989, disclosure materials had already been distributed to the stockholders.

On February 21, 1989, a majority of California Livestock stockholders voted unanimously at a duly authorized meeting to approve the termination of California Livestock's status as a Farm Credit System entity. On February 27, 1989, California Livestock gave notice of the outcome of the stockholders' vote to the Farm Credit Administration.

Following approval of the termination plan by the stockholders, California Livestock continued its discussions with the State Superintendent of Banks and the FDIC, and secured requisite approvals from these agencies. In June, 1989, the FCA advised California Livestock that it was in the process of drafting termination regulations but that these regulations could not be adopted until a quorum of the FCA Board had reconvened. In the fall of 1989, California Livestock repeatedly advised the FCA of the need for prompt termination.

On February 5, 1990, the FCA sent California Livestock notification that the FCA Board had denied California Livestock's termination request dated December 23, 1988. In denying the termination request, the FCA asserted that California Livestock violated 7.11(a)(2) when it submitted the termination proposal to its stockholders for a vote prior to receipt of FCA Board approval.

The FCA invited California Livestock to submit another termination application. As a condition for consideration of the new application, the FCA proposed that California Livestock pay a preliminary exit fee to be held in an escrow account with the System Financial Assistance Corporation ("FAC"), subject to possible refund. The payment into escrow was to be recomputed after the adoption of final termination regulations.

The FCA advised California Livestock that the methodology for calculating the exit fee was to be based on the "criteria and issues raised in [an] Advance Notice of Proposed Rulemaking ("ANPR") on the termination regulations, which [would] be

interpreted in the most conservative manner possible; *i.e.* that provides for the maximum amount payable as an exit fee." In addition, the FCA proposed to have California Livestock submit revised disclosure materials to its stockholders for a second stockholder vote. The FCA promised to work with California Livestock to expedite the transaction if California Livestock chose to exit from the System prior to the issuance of final regulations.

California Livestock responded to the FCA's February 5, 1990 letter, rejecting the FCA's interpretation of 7.11. California Livestock argued that the language of the statute clearly authorized the submission of the termination plan to its shareholders without agency approval, following 30 days of inaction by the FCA Board.

Between February, 1990 and May, 1990, California Livestock and the FCA were unsuccessful in efforts to negotiate a plan to allow California Livestock to exit the Farm Credit System and reorganize under the supervision of bank regulatory authorities. On June 1, 1990, California Livestock filed its complaint in this action seeking to enjoin the FCA from continuing to withhold approval of the termination of California Livestock's status as a System institution and challenging the FCA's proposed methodology for calculation of an exit fee in accordance with the pending regulations.

■■■■ The controlling issue in this action is whether 7.11 of the Farm Credit Act of 1971 authorizes California Livestock to submit a termination plan and disclosure materials to its stockholders without FCA Board approval. This is a pure question of statutory construction. The FCA contends that this court must defer to the FCA's interpretation and enforcement of the Farm Credit Act. While the FCA's interpretation of the Farm Credit Act is entitled to deference as the FCA is the agency charged with the administration and enforcement of the Act, courts are the final authorities of statutory construction. *See Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981).

■■■■ In this instance, the FCA is not entitled to deference as the plain language of the Farm Credit Act controls. It is well settled that where congressional intent is clear from the express language of the statute, no deference to an administrative agency is owed. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) (stating that "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"); *accord Sullivan v. Everhart*, — U.S. ——, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990).

The Farm Credit Act offers System institutions an array of alternatives for reorganizing or restructuring under other banks and financial regulatory regimes. Section 7.10 of the Farm Credit Act provides a Farm Credit System institution the statutory right to terminate status as a System entity upon compliance with specified conditions.[1]

---

1. Section 7.10 of the Farm Credit Act of 1971 provides as follows:
   (a) Conditions
   A System institution may terminate the status of the institution as a System institution if—
   (1) the institution provides written notice to the Farm Credit Administration Board not later than 90 days prior to the proposed termination date;
   (2) the termination is approved by the Farm Credit Administration Board;
   (3) the appropriate Federal or State authority grants approval to charter the institution as a bank, savings and loan association, or other financial institution;

   (4) the institution pays to the Farm Credit Assistance Fund, as created under section 2278b–5 of this title, if the termination is prior to January 1, 1992, or pays to the Farm Credit Insurance Fund, if the termination is after such date, the amount by which the total capital of the institution exceeds, 6 percent of the assets;
   (5) the institution pays or makes adequate provision for payment of all outstanding debt obligations of the institution;
   (6) the termination is approved by a majority of the stockholders of the institution voting, in person or by written proxy, at a duly authorized stockholders' meeting, held prior to giv-

On December 23, 1988, California Livestock requested FCA Board approval to terminate its status as a Farm Credit System institution under 7.10 and submitted the termination plan and stockholder disclosure materials to the FCA Board for approval in accordance with the requirements of 7.11(a) of the Farm Credit Act. Section 7.11(a) of the Farm Credit Act provides in pertinent part as follows:

(1) Approval of Plan

With respect to any plan of merger, transfer of lending authority, dissolution, or termination, prior to submission to the voters ... of the institutions involved, such plan shall be submitted to the FCA, together with all information that is to be distributed to the voters with respect to the contemplated action, including an enumerated statement of the anticipated benefits and potential disadvantages of such action.

(2) Notice of Approval

On notification that the FCA has approved such plan for submission to the stockholders, or after 30 days of no action on the plan by the Board, the submitting institutions may submit the plan, together with the disclosure information, to the voters for the prescribed vote.

12 U.S.C. 2279e(a).

Section 7.11(a) does not require agency action to authorize submission of a termination plan to the stockholders of a System institution. Under 7.11(a)(2), the FCA Board has 30 days to approve, disapprove, or take no action on a termination plan and disclosure materials. If the FCA Board fails to take action within the prescribed 30 day period, 7.11(a)(2) expressly authorizes

the System institution to submit the plan and disclosure information to its stockholders for approval. The FCA Board did not act on California Livestock's termination plan within the requisite 30 day period. Accordingly, 7.11(a)(2) authorized California Livestock to submit the termination plan and disclosure materials to its stockholders for the prescribed vote.

■ The FCA argues that the 30 day period was tolled while the Board was without a quorum.[2] It is the FCA's contention that because the FCA Board lost its quorum on January 7, 1989, the 30 day period that began on December 23, 1988 did not expire until late October, 1989, after a quorum of the FCA Board was reconvened. The basic premise of the FCA's argument is that under 7.11(a)(2), Board approval is a prerequisite to a stockholder vote on a termination plan. The FCA argues that because California Livestock submitted the plan to its stockholders during a period in which the Board could not act because of absence of a quorum, the FCA could not provide the requisite approval. Thus, California Livestock's submission of the termination proposal to its stockholders was invalid under 7.11.

■ Section 7.11(a)(2) does not require approval by a quorum of the FCA Board. Congress clearly and unambiguously provided that after 30 days of inaction by the FCA Board, the submitting institution is entitled to present the termination plan and disclosure materials to its stockholders. Congress intended that the FCA act promptly to approve or disapprove of a termination proposal.[3] The 30 day period

ing notice to the Farm Credit Administration Board; and

(7) the institution meets such other conditions as the Farm Credit Administration Board by regulation considers appropriate.

12 U.S.C. 2279d.

**2.** The Farm Credit Act of 1971 provides that the FCA Board "may transact business if a vacancy exists, provided a quorum is present. A quorum shall consist of two members of the Board." 12 U.S.C. 2242(c).

**3.** Section 7.11 of the Farm Credit Act originated in the Senate Bill. See H.R.Conf.Rep. No. 490,

100th Cong., 1st Sess. 260, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2723, 2956, 3055. Under the Senate Bill, "[o]n notification by the FCA that no deficiencies exist in the plans (or after 60 days of no action by the Board) the submitting entities may submit the plan of action and the disclosure information to the voters." S.Rep. No. 230, 100th Cong., 1st Sess. 102 (1987); *see* H.R.Conf.Rep. No. 490, 100th Cong., 1st Sess. 260, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2956, 3055. "The Senate amendment provides that the institutions could submit a proposed plan to voters after 60 days of no action on the plan by the Board"). In conference, the period was short-

ensures that FCA inaction will not preclude or delay a institution's statutory right to exit the Farm Credit System.

In drafting the statute, Congress did not distinguish among the many reasons that the FCA might cite for failing to act on a particular submission within the 30 day period. In *McLaughlin v. Union Oil Co.*, 869 F.2d 1039, 1041 (7th Cir.1989), at issue was a statutory condition that provided the finality of an Occupational Safety and Health Administration ("OSHA") administrative law judge's decision was that no member of the OSHA Review Commission direct, within 30 days, that the decision be reviewed. The Court held that the absence of a quorum on the OSHA Review Commission would not preclude a finding of finality. *McLaughlin*, 869 F.2d at 1042. The *McLaughlin* Court stated that

> [t]here is nothing in the statute concerning the *reasons* no member might direct review in a case. One reason might be, as here, the absence of a quorum; even more dramatic would be a case where because the Commission had no members, no member *could* direct review.... Congress wanted persons aggrieved by orders of administrative law judges of the Occupational Safety and Health Review Commission to be able to obtain judicial review even if the Commission declined—for whatever reason—to review the orders.

*Id.*

By providing for 30 days of inaction by the FCA Board, Congress clearly envisioned that there would be periods where a full quorum of the FCA Board would be unable to act. The FCA's purported inability to function without a quorum may not be used to deny an institution its statutory right to exit the Farm Credit System. Under 7.11(a)(2), inaction by the FCA Board for any reason, including lack of a quorum, provides a System institution the statutory right to submit a termination proposal to its stockholders for the prescribed vote.

The FCA Board was authorized to take action on the California Livestock termination proposal notwithstanding the lack of a quorum. *See Assure Comp. Transp. Inc. v. United States*, 629 F.2d 467, 470 (7th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981) (in construing whether five members of the Interstate Commerce Commission could legally act on behalf of the eleven member Commission while six commissioners were absent, the Court stated that a "vacancy in the membership of the commission does not impair the right of the remaining members to exercise all of the powers of the Commission"). Prior to the resignation of the second member of the three-member FCA Board, the FCA anticipated an indefinite lack of quorum and adopted FCA Order No. 888. This delegation Order, dated January 6, 1989, authorized the sole remaining member of the Board, Acting Chairman Duncan, to exercise all delegable powers of the FCA, including "the approval of any and all actions of Farm Credit institutions as required by statute, regulations, or otherwise to be approved by the FCA or its Board".[4]

Under the January 6, 1990 delegation Order, Acting Chairman Duncan was authorized to approve, disapprove, or take no action at all on California Livestock's termi-

---

ened to 30 days. H.R.Conf.Rep. No. 490, *reprinted in* 1987 U.S.Code Cong. & Admin.News 2956, 3055.

**4.** Acting Chairman Duncan apparently relied on this authority when he granted final approval of various mergers of System institutions while the Board was without a quorum. On February 7, 1989, Acting Chairman Duncan granted final approval of the merger of the Arizona production Credit Association and the Federal Land Bank Association of Arizona. *See* California Livestock Production Credit Association Exhibits to its Memorandum in Support of its Motion for Summary Judgment (July 31, 1990), Exhib-

its 21–22. Acting Chairman Duncan approved a merger plan and disclosure materials for submission to the stockholders of the Federal Land Bank Association of Hawaii and the Hawaii Production Credit Association under 7.11 on July 12, 1989. *See id*, at Exhibit 23. A merger proposal submitted by the Central Valley Production Credit Association and the Federal Land Bank Association of Yosemite was denied by Acting Chairman Duncan on April 24, 1989. *See id*, at Exhibit 24. All the above cited merger plans were approved or disapproved by Acting Chairman Duncan while the FCA Board was without a quorum, pursuant to his delegated authority under FCA Order No. 888.

**422**

nation plan and disclosure materials submitted December 23, 1988. Chairman Duncan chose not to act within 7.11(a)(2)'s prescribed 30 day period. Thus, California Livestock was entitled to submit the termination plan to its stockholders, notwithstanding the lack of quorum on the FCA Board.

■ The FCA correctly points out that the January 6, 1990 delegation Order expressly excluded "authority to establish general policy and promulgate rules and regulations, or any delegation expressly prohibited by statute." *See* Defendant's Response to Plaintiff's Motion for a Preliminary Injunction (July 2, 1990), Exhibit A6; *see also First South Prod. Credit Ass'n v. Farm Credit Admin.*, 729 F.Supp. 1559, 1568 (E.D.Va.1990). The FCA posits that because the California Livestock proposal to terminate System status was the first of its kind reviewed by the FCA under the newly amended Farm Credit Act, approval of the termination plan would create "policy." The FCA argues that Chairman Duncan's approval of the California Livestock submission, acting without a quorum, would contravene the express prohibition of the delegation Order which specifically excluded the authority to establish general policy.

There is no basis in the FCA's contention that approval of the California Livestock submissions would create policy or dangerous precedent. Acting Chairman Duncan exercised his delegated authority to act on behalf of the FCA Board in approving and disapproving various merger plans that required approval by the FCA Board. The fact that the FCA has adopted regulations for mergers but not for termination would not make Acting Chairman Duncan's approval of the California Livestock submissions "policy." By approving the California Livestock submissions, acting Chairman Duncan would merely be implementing the statutory command of 7.11. Action on the California Livestock termination proposal would not be binding in subsequent proceedings involving other institutions, different circumstances, and the new termination

regulations that are now pending. *See generally Amarillo Prod. Credit Ass'n v. Farm Credit Admin.*, 887 F.2d 507, 512–513 (5th Cir.1989) *and American Trucking Ass'ns, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 387 U.S. 397, 416, 87 S.Ct. 1608, 1618–17, 18 L.Ed.2d 847 (1967).

From December 23, 1988 through January 6, 1989, a quorum of the FCA Board chose not to act on the termination proposal and disclosure materials submitted by California Livestock. From January 6, 1989, through January 22, 1989, Acting Chairman Duncan failed to approve, disapprove, or take any action at all on the California Livestock submissions. Because 7.11's requisite 30 day period of inaction by the FCA Board was satisfied, California Livestock had a statutory right to submit the termination plan and disclosure materials to its stockholders for the prescribed vote.

California Livestock has satisfied 7.10's statutory criteria for termination of System status. California Livestock's termination plan has been approved by a majority of its stockholders, the appropriate regulatory authorities have granted approval to charter Stockman's Bank of Commerce, arrangements for outstanding debts have been made, and the requisite notice of proposed termination date has been given to the FCA. Having complied with 7.10, the FCA cannot deny California Livestock its statutory right to exit the Farm Credit System.

■ The FCA contends that if California Livestock is permitted to withdraw from the Farm Credit System, additional hearings are needed to determine the exit fee. However, the amount of exit fee is expressly provided for by statute. Under 7.10(a)(4) of the Farm Credit Act, a terminating institution must pay an exit fee to the Farm Credit System equal to the amount by which its capital exceeds six percent of its assets.[5] Section 7.10(a)(4) provides an institution the right to retain all capital less than six percent of its assets. The FCA has refused to calculate the amount of exit

---

5. Section 7.10(a)(4) provides that as a condition for exiting the Farm Credit System, the institution must pay

to the Farm Credit Assistance Fund, as created under section 2278b–5 of this title, if the termination is prior to January 1, 1992, or

fee owed by California Livestock pending the adoption of termination regulations. Instead, the FCA has demanded that California Livestock place all of its capital in escrow subject to possible refund when final termination regulations are adopted.

Until the FCA adopts the new termination regulations, the existing law and regulations govern. Congress has provided in 7.10(a)(7) of the Farm Credit Act that the FCA may only impose additional conditions on termination proposals "by regulation." [6] The FCA is thus precluded by statute from imposing *ad hoc* conditions for termination on California Livestock.

The *ad hoc* procedure suggested by the FCA for calculating an exit fee whereby California Livestock would be required to place all of its capital in escrow indefinitely is inconsistent with sections 7.10(a)(4) of the Farm Credit Act. Section 7.10(a)(4) is currently in effect and governs the methodology for payment of an exit fee. Accordingly, the exit fee must be calculated pursuant to the methodology provided in 7.10(a)(4) as of the date of California Livestock's termination as a Farm Credit System institution.

For the foregoing reasons, the plaintiff's motion for summary judgment is GRANTED and defendant's motion for partial summary judgment is DENIED. Defendant's motion to dismiss is DENIED. California Livestock has complied with statutory conditions set forth in sections 7.10 and 7.11 of the Farm Credit Act for termination of System status. Accordingly, California Livestock may exit the Farm Credit System and pay a fee equivalent to the amount by which its total capital exceeds six percent of its assets determined as of the date of exit.

An appropriate ORDER shall issue.

pays to the Farm Credit Insurance Fund, if the termination is after such date, the amount by which the total capital of the institution exceeds, 6 percent of the assets;
12 U.S.C. 2279d(a)(4).

**6.** Section 7.10(a)(7) dictates that a System institution may terminate its status if "the institution meets such other conditions as the Farm Credit Administration Board by regulation considers appropriate." 12 U.S.C. 2279d(a)(7).